Rockingham
No. 2001-083

THE STATE OF NEW HAMPSHIRE

v.

ROBERT DEMERITT

Submitted: August 28, 2002
Opinion Issued: October 21, 2002

*Philip T. McLaughlin*, attorney general (*David W. Ruoff*, attorney, on the brief), for the State.

*Desfosses Law Firm*, of Portsmouth (*Sven D. Wiberg* on the brief), for the defendant.

DUGGAN, J. The defendant, Robert Demeritt, appeals his convictions for negligent homicide and reckless conduct. On appeal, he argues that the Trial Court (*Coffey*, J.) made several improper evidentiary rulings. He also argues that the trial court gave an erroneous jury instruction, deprived him of a public trial by excluding his female companion from the view, and improperly refused to dismiss the charges on double jeopardy grounds. We affirm.

The charges arose out of the defendant's operation of a van on August 17, 1998. At 7:00 a.m., Greg Scanlon, the victim, left for work driving a Subaru. At approximately 7:45 a.m., the Subaru passed a vehicle on Route 152. The occupants of that vehicle testified that the Subaru was traveling at a high rate of speed, and following closely behind it was a white van being driven by the defendant. They also testified that the van was traveling just as fast and appeared to be "chasing" the Subaru. Other witnesses testified that as the two vehicles traveled down Route 152, the defendant's van was in the wrong lane and oncoming vehicles were forced off the road. Thereafter, while the defendant was steering the van back into its proper travel lane, the van struck the Subaru, causing it to hit a

telephone pole and a tree. The Subaru ultimately came to rest upside down twenty-five feet down an embankment. Scanlon was killed instantly. The defendant's van came to rest on the other side of Route 152.

Nottingham Police Chief Philip English arrived on the scene within minutes. Someone told the chief that "the van pushed the [Subaru] off the road." The chief then asked who was driving the van. The chief testified that the defendant put his hand up and said, "I was." The chief asked the defendant what happened. The defendant responded that "he would try to pass, the car would speed up, then he'd pull in and the car would slow down and try to pass, and then [the defendant] said, 'Up here, I bumped it off the road.'" The chief then put up his hand and said, "Don't say any more" and told the defendant, "Go stand over by my cruiser."

Sometime later, after other fire and rescue personnel had arrived at the scene and Scanlon's body was removed from his vehicle, a State trooper attempted to speak with the defendant but the defendant refused to speak to him.

The defendant was initially tried for manslaughter, RSA 630:2 (1996), and reckless conduct, RSA 631:3 (1996). He was acquitted of manslaughter, but convicted of the lesser-included offense of negligent homicide and reckless conduct. The trial court vacated these convictions due to juror misconduct. On retrial, the defendant was again convicted of negligent homicide and reckless conduct. This appeal followed.

The defendant first argues that his silence in response to the State trooper's questions was inadmissible. During the State's case-in-chief, the trooper who spoke to the defendant testified that he asked the defendant about the incident, but the defendant told him, "He didn't want to say anything." Defense counsel immediately asked for a mistrial. The State, apparently assuming that the defendant would later testify, argued the statement was admissible in spite of *Doyle v. Ohio*, 426 U.S. 610 (1976), which prohibits the prosecution from using a defendant's post-arrest, pre-*Miranda* silence to impeach. Although the defense argued *Doyle* applied, the court denied the motion for a mistrial. After the State rested its case, the defendant testified that although he wanted to give the "full version of the story" to the police, he did not say anything to the trooper because the chief had told him to stop talking. The prosecution cross-examined him as to why he had refused to talk with the trooper.

On appeal, the defendant argues that his statement that "he didn't want to say anything" was inadmissible under New Hampshire Rule of Evidence 512(a) and *Doyle v. Ohio*, 426 U.S. at 615-19. The State contends that because the defendant never referred to Rule 512(a) or any State or federal constitutional provisions when he objected to the admission of this

statement, none of these arguments are preserved for appellate review. The State also contends that this issue is not preserved for appeal because the defendant failed to object to the statement's introduction during the prosecution's cross-examination of the defendant.

At the outset, we reject the State's argument that the defendant did not properly preserve these issues for appeal. With regard to the defendant's challenge under Rule 512(a), when defense counsel moved for a mistrial, he argued that "now we have a comment on essentially his refusal to talk to the police." Although defense counsel did not cite any particular rule, the objection follows the language of Rule 512(a). *See* N.H. R. Ev. 512(a). It is thus a specific objection adequate to preserve this issue for appeal. *See* N.H. R. Ev. 103(a); *State v. Wisowaty*, 133 N.H. 604, 607-08 (1990). Moreover, during the colloquy at the bench, defense counsel argued that the rule of *Doyle* applies. While defense counsel did not specifically state that the admission of the defendant's statement would violate his due process rights, the exchange made clear to the trial judge that due process was the basis of the objection. Lastly, we reject the State's contention that the failure of defense counsel to object during the defendant's testimony bars appellate review. Having already raised the issues regarding the admissibility of the defendant's statement to the trooper, defense counsel was not required to repeat the objections when the same evidence was elicited from the defendant. *See State v. Parra*, 135 N.H. 306, 309 (1992); *State v. Simonds*, 135 N.H. 203, 205 (1991).

We now turn to the merits of the defendant's arguments. The defendant's first argument relies on Rule 512(a), which states: "The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel." N.H. R. Ev. 512(a). Even assuming that the defendant's statement that "he didn't want to say anything" constitutes a claim of privilege, Rule 512(a) does not bar its admissibility. By its plain language, the rule does not apply to the testimony of a witness but instead prohibits judges and counsel from commenting on a defendant's claim of privilege. The purpose of this rule is to prohibit a jury from drawing negative inferences from the invocation of the right against self-incrimination. *See Fischer v. Hooper*, 143 N.H. 585, 594 (1999). Because Rule 512(a) does not purport to bar testimony by witnesses, the rule is simply inapplicable to the State trooper's testimony.

The defendant's second argument relies upon *Doyle* and the Fourteenth Amendment. When a defendant is advised of his *Miranda* warnings, fundamental fairness prohibits the prosecution from using the

defendant's silence in response to these warnings to impeach the defendant's credibility, *see Doyle*, 426 U.S. at 618, or from using the silence in its case-in-chief as substantive evidence of the defendant's guilt, *see United States v. Tenorio*, 69 F.3d 1103, 1106-07 (11th Cir. 1995). The State contends that *Doyle* is inapplicable because the defendant was not read and did not invoke his *Miranda* rights prior to his refusal to answer police questions. *Doyle* and its progeny, however, are not rooted in the self-incrimination protection of the Fifth Amendment, but rather in the due process guarantee of the Fourteenth Amendment. *Doyle*, 426 U.S. at 618. The relevant inquiry, thus, is whether "governmental action induced the defendant to remain silent before his arrest." *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980); *see also State v. Hill*, 146 N.H. 568, 577 (2001). As a practical matter, such inducement will almost always come in the form of a post-arrest reading and invocation of *Miranda* rights. This case presents an unusual situation: a police officer, without advising the defendant of his *Miranda* rights, ordered the defendant not to say anything. It would be anomalous to hold that fundamental fairness precludes the use of silence when the State merely advises a defendant of his right to remain silent, *see Doyle*, 426 U.S. at 617-18, but not when the State orders him to do so. Thus we hold that fundamental fairness precludes the State's use of the defendant's silence in its case-in-chief and for impeachment purposes.

Having found error in the court's decision to admit evidence of the defendant's silence, we must determine whether the error was harmless. "Where the trial court has erroneously admitted evidence, we must reverse unless the State can show beyond a reasonable doubt that such error did not affect the verdict." *State v. MacArthur*, 138 N.H. 597, 599 (1994). Thus, we must review the evidence presented to the jury. In this case, the defendant did not dispute that he was the driver of the van, that he tried to pass Scanlon on the left, that he crossed over the double-yellow line into the wrong lane, that he drove in that lane alongside Scanlon for some time without braking, and that he came into contact with Scanlon's car as the defendant attempted to enter Scanlon's lane. Officer English testified that the defendant admitted he "bumped" Scanlon's car off the road. The State produced a number of witnesses who testified that the defendant was traveling at a high rate of speed and in the wrong lane when the accident occurred, that the defendant's van bumped into Scanlon's car, and that this bump forced Scanlon off the road. Alongside this abundance of direct evidence demonstrating reckless and negligent driving, the testimony of the defendant's silence introduced by the State was relatively unimportant. The prosecutor, in fact, did not even allude to it during his

closing argument. Under these circumstances, we find that the erroneously admitted evidence was harmless beyond a reasonable doubt and did not affect the verdict of the jury.

The second issue on appeal is whether the statement made by an unidentified person to the police chief was admissible as an excited utterance. New Hampshire Rule of Evidence 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The availability of the declarant is immaterial to the statement's admissibility. For a statement to be admissible as an excited utterance, "it must appear to the satisfaction of the presiding justice that the utterance was a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event and before he had time to contrive or misrepresent." *Simpson v. Wal-Mart Stores*, 144 N.H. 571, 575 (1999) (quotation omitted). We will not reverse a trial court's ruling on the admissibility of evidence absent an unsustainable exercise of discretion. To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *State v. Francoeur*, 146 N.H. 83, 86 (2001); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

The defendant points out that there was no testimony as to the identity of the declarant, raising the possibility of double hearsay, and that the chief did not testify that this particular declarant was in a state of nervous excitement. Despite these facts, a review of the record lends reasonable support to the trial court's ruling. Testimony established that a crowd of persons, many of whom had witnessed the accident, had gathered and that they were "very upset," "angry" and in "shock." Chief English arrived on the scene quickly, most likely within ten to fifteen minutes of the accident. The statement was made to the chief just as he arrived and was headed towards Scanlon's car to check on his condition. Moreover, the statement was spontaneous, not in response to a question. Finally, the statement itself is an indicator of reliability, as an eye-witness would be more likely to volunteer a description of the accident than a second-hand witness. Given these facts, we conclude that the trial judge properly exercised her discretion in admitting the statement as an excited utterance made by an eyewitness to the accident.

The defendant also argues, for the first time on appeal, that the admission of this hearsay testimony violates the United States

Constitution. Since defense counsel did not raise this argument at trial, we do not address it. *See Wisowaty*, 133 N.H. at 607.

■The third issue raised by the defendant is the admissibility of his prior convictions. The defendant was convicted on three charges of aggravated felonious sexual assault in 1988. The trial judge ruled that the convictions were admissible to impeach the defendant's testimony, but deleted any reference to the sexual nature of the assaults by allowing the convictions into evidence as felony assaults. On appeal, the defendant argues first that the convictions were not admissible under New Hampshire Rule of Evidence 609, and second, even if they were admissible, the trial court admitted them "in a misleading way." As the defendant's second argument was not raised before the trial court, we do not address it. *See id.*

Rule 609 allows into evidence a felony conviction for impeachment purposes if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant," N.H. R. Ev. 609(a), unless "a period of more than ten years has elapsed since the date of conviction or of the release of the witness from the confinement imposed for that conviction." N.H. R. Ev. 609(b). "[P]rior convictions are admissible to impeach a defendant even if the crimes do not directly involve a lack of veracity." *State v. Brooks*, 126 N.H. 618, 625 (1985). We have frequently noted that a trial court "must insure that cross-examination relating to prior convictions does not cause undue prejudice to the defendant." *Id.* (quotation omitted); *State v. Porter*, 144 N.H. 96, 102 (1999). On appeal, we review the trial court's ruling to determine whether the ruling was a sustainable exercise of discretion. *Brooks*, 126 N.H. at 625; *see also State v. Lambert*, 147 N.H. at 296.

Here, the defendant was not released from confinement until 1992, less than ten years before trial. Although the convictions themselves did not involve a lack of veracity, they may be admitted because the jury should "be informed what sort of person is asking them to take his word. Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey." *State v. Cote*, 108 N.H. 290, 296 (1967), *cert. denied*, 390 U.S. 1025 (1968) (quotation and ellipsis omitted). Importantly, the trial judge tried to reduce the prejudicial effect by granting the defense request that the convictions be elicited only as felony assaults. Finally, at trial, defense counsel elicited the convictions during three brief questions and also brought out the fact that the prior convictions did not involve driving or motor vehicles. Under these

circumstances, we sustain the trial judge's exercise of her discretion in admitting the two prior convictions.

The fourth issue raised by the defense is a claim that "potentially exculpatory evidence from the scene of the accident" was lost or destroyed. In identifying what evidence was lost or destroyed, the defendant's brief simply states, "The State's witnesses establish that items were lost and road markings were altered or not preserved." The defendant then directs this court to a one hundred and fifty page section of the transcript, which presumably identifies portions of the record supporting his contention. From this assertion, we are unable to determine what items were lost, what road markings were altered or what road markings were destroyed. Because the defendant's brief does not adequately identify the evidence he claims was lost or destroyed, we decline to address the issue.

The fifth issue is whether the trial court erred by excluding from evidence the victim's prior convictions for reckless driving and disobeying a police officer, as well as two speeding tickets and the victim's certification as a habitual offender. The defendant argues that the trial court improperly barred him from cross-examining the victim's wife regarding the victim's history of reckless driving, even after the victim's wife testified "in a way which suggested his good character and improperly invited sympathy."

Pursuant to New Hampshire Rule of Evidence 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." Rule 404(a)(2) provides an exception to this general rule by allowing a defendant to introduce evidence of the victim's character if it is "[e]vidence of a pertinent trait of character of the victim." In a case such as this, where the defendant asserts that the victim was driving both aggressively and recklessly and thus caused the accident, the victim's character for reckless driving and aggressiveness would be a pertinent trait. *See State v. Newell*, 141 N.H. 199, 201 (1996). The method of proving character evidence admissible under Rule 404(a)(2) is governed by New Hampshire Rule of Evidence 405(a).

Under Rule 405(a), proof of the victim's character may be made "by testimony as to reputation or by testimony in the form of an opinion." On cross-examination, inquiry into relevant specific instances of conduct is permitted. N.H. R. Ev. 405(a). The purpose of allowing a defendant to impeach a witness's testimony with specific instances of the victim's character is "to expose the basis of the testimony of the witness and put

444

his conclusions to the test, and not to prove the conduct in question." C. MUELLER & L. KIRKPATRICK, FEDERAL EVIDENCE § 121, at 721 (2d ed. 1994). Here, the record reveals that the victim's wife testified solely as a factual witness and the purpose of her testimony was to establish that, when her husband left the house, he was not late for work. She did not testify as to her opinion or her husband's reputation as a peaceful person or careful driver. We conclude, therefore, that the trial court properly barred the defendant from introducing specific instances of the victim's past conduct to impeach the victim's wife's testimony. *See* N.H. R. EV. 405(a).

■ The defendant also argues that because the theory of the defense was that the victim was the aggressor, evidence of his propensity for reckless driving is essential to an adequate defense and, therefore, admissible under Rule 405(b). Under Rule 405(b), the defendant may introduce evidence of a victim's character as substantive evidence only "when the victim's character or trait of character is an essential element of a charge, claim, or defense." *State v. Michaud*, 146 N.H. 29, 32 (2001) (quotations omitted). Character is an essential element only when "character itself is an issue under substantive law." 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 405.05[4] (J. McLaughlin ed., 2d ed., 1999). For example, in a damages action against an employer for hiring or retaining a known incompetent worker, the worker's propensity for incompetence is an essential element of the claim. *Id. See also United States v. Piche*, 981 F.2d 706, 713 (4th Cir. 1992), *cert. denied*, 508 U.S. 916 (1993) (citing "plaintiff's reputation for honesty in a defamation action" as example where character is an essential element). The practical application of Rule 405(b) is thus extremely limited.

■ Although the defendant argues that the victim's reckless character is an "essential element" of his defense that the victim was driving recklessly and caused the accident, we have expressly rejected this argument. *See Newell*, 141 N.H. at 201-02 (explaining that a victim's aggressive character was not an essential element to prove a defendant's claim of self-defense). In this case the victim's character trait of reckless driving, while relevant to the defense of alternate causation, is not a substantive element that the defendant had to prove in order to prevail on his defense. Thus, we conclude that the trial court properly excluded evidence regarding specific acts consistent with this trait.

We next turn to the defendant's three non-evidentiary issues. First, the defendant argues that the trial court erred in not instructing the jury on RSA 265:19, which describes when a vehicle may pass another vehicle on

the right. The defendant argues that the victim violated this statute, and that this violation was the cause of the accident. We review the trial court's failure to give an instruction for an unsustainable exercise of discretion. *State v. Laurent*, 144 N.H. 517, 522 (1999); *see also Lambert*, 147 N.H at 296. Although the scope and wording of jury instructions is generally within the sound discretion of the trial court, *State v. Dale*, 146 N.H. 286, 289 (2001), the court "must grant a defendant's requested jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense." *State v. Jaroma*, 137 N.H. 143, 153 (1993) (quotation omitted). "Some evidence" is more than a "minutia or scintilla of evidence." *State v. Cote*, 143 N.H. 368, 378 (1999). Furthermore, "reversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case." *State v. Plante*, 134 N.H. 456, 460 (1991).

The defendant's own testimony established that the accident occurred when the defendant tried to pass Scanlon on the left. Without evidence that Scanlon attempted to pass the defendant on the right, we do not see any grounds for reading RSA 265:19 to the jury. In any case, the trial court issued extensive instructions relating to competing harms, superseding intervening causation, and RSA 265:18, which forbids the driver of an overtaken vehicle from increasing his speed until the overtaking vehicle has completely passed him. Because the instructions fairly covered the law relating to all defense arguments, we find the exclusion of the RSA 265:19 instruction to be a sustainable exercise of discretion.

We next consider the defendant's second non-evidentiary issue. The defendant argues that the exclusion of his female companion from a portion of the jury's view of the accident scene violated his Sixth Amendment right to a public trial. The only case defense counsel cites for this proposition is *Waller v. Georgia*, 467 U.S. 39 (1984), which holds that a pre-trial suppression hearing may not be completely closed to the public absent specific findings by the trial court that justify closure. *Id.* at 48. Even if this requirement applied to on-the-scene jury views of evidence, we cannot hold that the exclusion of the defendant's companion from the scene of the view is tantamount to closing the view from the public. We thus find no merit in the defendant's argument.

Finally, the defendant argues that his second trial and conviction for negligent homicide violate the Double Jeopardy Clauses of the State and Federal Constitutions. As a general rule, it is true that "double jeopardy precludes the State from pursuing a second prosecution

stemming from the same conduct or events charged in a previous prosecution provided the charges constitute the same offense." *State v. Nickles*, 144 N.H. 673, 677 (2000). However, both the Federal and State Constitutions have long been interpreted to allow a second trial when a defendant procures a reversal of his first conviction. *See United States v. Ball*, 163 U.S. 662 (1896), *cited with approval in Burks v. United States*, 437 U.S. 1, 12-15 (1978); *State v. Collins*, 133 N.H. 609, 618 (1990); *State v. Prescott*, 7 N.H. 287, 288 (1834). In this case, the trial court's vacation of the first conviction upon the defendant's motion was the functional equivalent of a successful appeal for State and Federal Double Jeopardy purposes. We therefore affirm the trial court's ruling.

*Affirmed.*

BROCK, C.J., and DALIANIS, J., concurred.