Hillsborough-northern judicial district
No. 2002-592

THE STATE OF NEW HAMPSHIRE

v.

DANIEL SMALL

Argued: November 5, 2003
Opinion Issued: January 16, 2004

458

*Peter W. Heed,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Landya McCafferty,* assistant appellate defender, of Dover, on the brief and orally, for the defendant.

NADEAU, J. The defendant, Daniel Small, appeals his convictions, following a jury trial in Superior Court (*Barry,* J.), on six felony counts of stalking. *See* RSA 633:3-a (Supp. 2002) (amended 2002); RSA 173-B:9 (2002) (amended 2002). We affirm.

The six indictments against the defendant related to incidents allegedly occurring on or about October 17, 2001, and October 24, 2001. Three indictments, relating to October 17, 2001, alleged that the defendant, having been provided with a protective order issued pursuant to RSA 173-B:3, and having previously been convicted of violating a protective order, purposely committed the following acts: 1) he abused Donna Small by following her in his vehicle as she drove from the area near the Hillsborough County Courthouse to Bedford; 2) he approached within one hundred yards of Donna Small with his vehicle as she drove from the area near the Hillsborough County Courthouse to Bedford; and 3) he engaged in contact with Donna Small by gesturing at her with his middle finger. The three indictments relating to October 24, 2001, alleged that the defendant, having been provided with a protective order issued pursuant to RSA 173-B:3, and having previously been convicted of violating a protective order, purposely committed the following acts: 1) he abused Donna Small by following her in his vehicle as she rode in a car from the

area near the Peterborough Police Department to Sandhill Road; 2) he abused Donna's daughter, Jennifer Small, by following her in his vehicle as she drove from the area near the Peterborough Police Department to Sandhill Road; and 3) he approached within one hundred yards of Donna Small with his vehicle as she rode in a car from the area near the Peterborough Police Department to Sandhill Road.

The jury could have found the following facts. At the time of the alleged offenses, the defendant was married to Donna Small. In June 2000, the defendant filed for divorce and Donna obtained a restraining order against him. On October 17, 2001, Donna and the defendant were at the Hillsborough County courthouse in Manchester for a trial against the defendant for criminal threatening and restraining order violations. After the trial, the two left the courthouse, entered their vehicles, and proceeded in opposite directions around the block to the intersection of Granite and Elm Streets. As Donna pulled up to the intersection to take a right onto Granite Street, the defendant, heading perpendicular to Donna onto Granite from Lake Avenue, pulled up in front of Donna, stopped, and "gave [her] the finger." After the defendant moved on, Donna proceeded straight on Elm Street instead of turning right.

Donna then decided to stop at a store to buy bread. While in the store, Donna saw the defendant's vehicle pass by the store twice. Donna waited a few minutes, left the store, and drove toward the intersection of Routes 101 and 114. At that intersection, Donna saw the defendant's vehicle in front of her. The defendant, seeing Donna in his rear view mirror, turned around and gave her "more hand signals." The two then proceeded in different directions at that intersection.

On October 24, 2001, the defendant had visitation with his and Donna's son. The pre-arranged drop-off site after visitation was the Peterborough police department parking lot. Donna, her daughter Jennifer, and Rebecca, the daughter of Donna and the defendant, arrived at the police station first that evening in Jennifer's car. The defendant arrived, dropped off his son, and left without incident. Jennifer waited a few minutes and then left in the same direction the defendant had gone. Donna saw the defendant in his vehicle in a parking lot with the vehicle's headlights off. As Jennifer's car passed, the defendant turned on his headlights and pulled out behind her. The defendant followed Jennifer's car less than a car's length behind her with his high beams on.

Jennifer proceeded onto Route 202 with the defendant still following. Although she would normally have stayed on Route 202 until it intersected with Route 136, she took an earlier turn onto Sandhill Road to try to get away from the defendant. The defendant also turned onto Sandhill Road, which would not have been the fastest way to return to his home. When

Donna held up her cell phone to call 911, the defendant turned around and headed back onto Route 202.

The defendant argues that the trial court erred by denying his motion to dismiss the indictments on the grounds that the temporary restraining order had expired by the time the charged incidents occurred. The defendant acknowledges that RSA chapter 173-B contains no express time limit for temporary restraining orders, but contends that RSA 173-B:5, VI (2002) restricts the duration of final orders to no more than a year unless extended by court order. The defendant then argues that "it follows from the statute as a whole, that a 'temporary' order must have a shorter duration than a 'final' order." Thus, according to the defendant, the temporary restraining order issued against him on June 26, 2000, must have expired by June 26, 2001, prior to the charged incidents. As there was no valid restraining order in effect at the time of the charged incidents, the defendant argues, his convictions must be overturned.

The State argues, and the trial court found, that the restraining order was extended by the superior court pursuant to an agreement by the parties. The temporary order issued by the Goffstown District Court on June 26, 2000, contained a notice of hearing set for July 11, 2000. *See* RSA 173-B:3, VII (2002). On that date, the district court issued an order providing in part:

> Temporary Orders continued. The Court understands that Petition for Divorce is going to be filed in the Superior Court. Counsel for the respondent is to file, with this Court, a copy of said pleadings within thirty days. Once the Petition for Divorce is filed with the Superior Court this case is to be transferred to Hillsborough County Superior Court.

In November 2000, Donna and the defendant filed in superior court an amended domestic violence order that they both had agreed to and signed. It provided in part that "[t]he domestic violence order entered by the Goffstown District Court on July 11, 2000 shall remain in full force and effect" except with respect to its visitation conditions. The marital master recommended approval of the proposed order on November 27, 2000, and the court approved the master's recommendation on November 28, 2000. Following a hearing, a final domestic violence order was issued by the superior court on January 28, 2002.

Nothing in the record indicates that the defendant ever appealed the temporary order or moved to have it terminated. Indeed, he agreed that it would remain in force. He now, however, seeks to collaterally attack the

order in this proceeding. We have recognized that such collateral attacks are generally not permitted:

> The general underlying premise is that a person subject to an injunctive order issued by a tribunal with the requisite personal and subject matter jurisdiction should be bound to pursue any objection to the order through the constituted judicial process available for that purpose. Such an individual has the means to press any meritorious claim of right without first acting in violation of a presumptively valid ruling that ostensibly binds him. As a consequence, a court trying a charge of such a violation is justified in refusing to entertain a defense in the form of a collateral attack on the order, the subject of which could have been raised and litigated through the judicial process prior to the violation charged.

*State v. Grondin*, 132 N.H. 194, 200 (1989). Accordingly, we hold that the defendant may not collaterally attack the protective order in this criminal proceeding; therefore, we need not address the merits of the defendant's challenge of the protective order.

■ The defendant next argues that the trial court erred in failing to instruct the jury on his "legitimate purpose" defense. "We review the trial court's failure to give an instruction for an unsustainable exercise of discretion." *State v. Demeritt*, 148 N.H. 435, 445 (2002). The trial court must grant a defendant's request for a "jury instruction on a specific defense if there is some evidence to support a rational finding in favor of that defense." *Id.* (quotation omitted). We will not reverse a jury verdict, however, "when [the] jury charge fairly covers the issues and law of a case." *Id.* (quotation omitted).

RSA 633:3-a, II(a) provides that the term "course of conduct shall not include . . . conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person." The defendant, however, was charged under RSA 633:3-a, I(c), which requires only a specified single act of conduct for its violation. Thus, his argument that he was entitled to a legitimate purpose instruction implicitly assumes that the legitimate purpose provision of RSA 633:3-a, II(a) also applies to single acts of conduct charged under RSA 633:3-a, I(c). Because the State does not challenge that assumption, we assume without deciding, for purposes of this opinion only, that conduct necessary for a legitimate purpose is also not included as a "single act of conduct" under RSA 633:3-a, I(c). The defendant's argument also implicitly assumes that a legitimate purpose is

a defense to the crime of stalking, and therefore that the lack of a legitimate purpose is not an element of the crime that the State must prove. As the State has not challenged this assumption, we again assume without deciding, for purposes of this opinion only, that a legitimate purpose is a defense to stalking. *See* RSA 633:3-a, IV.

The defendant argues that because he testified with respect to both charged incidents that "he encountered Donna while driving to and from his home for legitimate reasons, independent of any contact with Donna," there was "some evidence to support a rational finding in favor of" a legitimate purpose defense, *Demeritt*, 148 N.H. at 445. The State contends that the defendant's reliance upon *Demeritt* is inappropriate because his "theory of a 'legitimate purpose' was not in the nature of a legal defense." Rather, the State argues, because the defendant denied essential allegations against him, this case is more analogous to *State v. Ramos*, 149 N.H. 272 (2003). We agree.

In *Ramos*, the defendant was charged with aggravated felonious sexual assault through concealment or the element of surprise. *Id.* at 272. On appeal, he argued that the trial court erred by refusing to instruct the jury on a consent theory of defense. *Id.* In upholding the trial court's ruling, we noted that the defendant had "mistakenly characterized his theory of the case as a theory of defense." *Id.* at 274. We explained:

> To use consent as a theory of defense, the defendant had to present evidence admitting the substance of the allegations against him, but pointing to facts which otherwise excused, exonerated or justified his actions, precluding criminal liability. In other words, the defendant had to present evidence showing a different legal significance for the facts alleged against him, in order to use consent as his theory of defense.

*Id.* (citation omitted).

■ We noted further, however, that while Ramos admitted to sexually penetrating the victim, his "consent theory specifically denied the element of penetration caused by his concealment or surprise by arguing he was invited into the home to engage in consensual sex." *Id.* Thus, Ramos' theory "presented an entirely different factual scenario for the jury to evaluate and turned the trial into a credibility contest between the defendant and the victim." *Id.* A witness's credibility, however, is not a "defense" to a criminal charge for purposes of requiring an instruction under *Demeritt*. *See State v. Guaraldi*, 124 N.H. 93, 97 (1983).

Similarly, the defendant here denied stopping in front of Donna at the intersection of Elm and Granite Streets on October 17, 2001, denied circling around the store at which Donna stopped, denied even seeing Donna after he drove away from the courthouse until she drove up behind him at the intersection of Routes 101 and 114, and denied making any hand gestures to her at that time. Regarding the October 24, 2001 incident, the defendant testified that although he drove behind Jennifer's car for a while, he did not know that it was Jennifer's car or that Donna and their children were in the car. He also denied getting closer than thirty yards to that car and following that car onto Sandhill Road.

We note that the defendant's denials of seeing Donna while driving home on October 17, or of knowing that he was following Jennifer's car on October 24, would, if believed, negate the element of acting purposely rather than support a legitimate purpose defense. We reiterate:

> A criminal defense, rightly understood in this context, resembles what is accomplished in civil law by a plea of confession and avoidance: The defendant raising such a defense *admits the substance of the allegation* but points to facts that excuse, exonerate or justify his actions such that he thereby escapes liability.

*Id.* (emphasis added).

As in *Ramos*, "the defendant has mistakenly characterized his theory of the case as a theory of defense." *Ramos*, 149 N.H. at 274. He presented the jury with a credibility issue, not a legal defense. Accordingly, the defendant was not entitled to an instruction on a legitimate purpose defense under *Demeritt. See State v. Bruneau*, 131 N.H. 104, 118 (1988).

With respect to legitimate purpose as the defendant's theory of the case, the court may instruct the jury "on a defendant's theory of the case whenever it is necessary to assist the jury in resolving the legal issues in a case and reaching a verdict. Whether an instruction is necessary in a particular case, however, is an issue reserved to the trial court's sound discretion." *Ramos*, 149 N.H. at 274 (citation omitted). We will reverse only if the court's exercise of such discretion is unsustainable. *Id.*

■ As noted above, the defendant's theory of the case pitted his credibility against that of the victim. The court instructed the jury on the credibility of witnesses. Accordingly, we conclude that the "jury charge fairly cover[ed] the issues and law of [the] case," *Demeritt*, 148 N.H. at 445 (quotation omitted), and that the trial court did not unsustainably exercise

its discretion in refusing to give a legitimate purpose *instruction, cf. Guaraldi,* 124 N.H. at 97-98.

■ The defendant next argues that a single act of following cannot alone constitute the crime of stalking. We disagree. RSA 633:3-a, I(c) provides, in relevant part, that a person commits the crime of stalking if, "[a]fter being served with, or otherwise provided notice of, a protective order pursuant to RSA 173-B, ... [he] purposely, knowingly, or recklessly engages in a single act of conduct that both violates the provisions of the order and is listed in paragraph II(a)." Paragraph II(a)(2) lists the following conduct: "Following, approaching, or confronting [the targeted] person, or a member of that person's immediate family." Thus, a single act of following can constitute stalking so long as it is prohibited by a protective order of which the defendant had notice.

The protective order against the defendant prohibited him from abusing Donna or her relatives. RSA 173-B:1, I (2002) defines abuse as "the commission or attempted commission of one or more of the following acts by a family or household member or current or former sexual or intimate partner and where such conduct constitutes a credible threat to the plaintiff's safety: ... (d) Interference with freedom as defined in RSA 633:1 through RSA 633:3-a." Thus, the order prohibited stalking if it constituted a credible threat to Donna's safety.

■ Noting that "the statutory definition of the word 'abuse,' as used in the indictments, employs as an essential element the crime of stalking," the defendant argues that by "referring to the concept of 'stalking' in the course of defining the crime of stalking, the court failed to give the jury any meaningful understanding of the substance of the charged crime." The defendant failed, however, to object to the court's instructions on this ground. This argument is therefore not preserved for appeal. *See State v. Devaney,* 139 N.H. 473, 474 (1995).

Similarly, the defendant contends that the trial court "completely neglected to instruct the jury regarding the 'credible threat' element." Because the defendant failed to object, however, this argument is also not preserved. *See id.*

The defendant next argues that the trial court erred in failing to dismiss the three indictments alleging abuse because the evidence of abuse was insufficient. "In an appeal challenging the sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Allard,* 148 N.H. 702, 705 (2002) (quotation omitted).

The State's initial response is that the defendant raised this issue only with respect to the indictment alleging abuse of Jennifer, and therefore the argument is not preserved for appeal with respect to the other two abuse indictments. *See State v. Fortier,* 146 N.H. 784, 788 (2001). We agree. In arguing for a directed verdict after the State rested, the defendant's counsel referenced the requirements for a finding of abuse only with respect to Jennifer. Thus, we address only the indictment alleging abuse of Jennifer.

That indictment required proof that: (1) the defendant acted purposely; (2) he had been served with or provided notice of a protective order pursuant to RSA chapter 173-B; (3) that protective order prohibited abuse of Jennifer; (4) the defendant abused Jennifer by following her in his truck as she drove from the area near the Peterborough Police Department to Sandhill Road; and (5) the defendant had previously been convicted of violating a protective order. *See* RSA 633:3-a; RSA 173-B:9. As noted above, the definition of abuse in RSA 173-B:1, I, requires that the specified conduct "constitute[] a credible threat to the plaintiff's safety."

The defendant argues that there was insufficient evidence of the "credible threat" element of the crime because "there was no evidence that [his] act of 'following' Jennifer and Donna in his pick-up truck represented any threat to their safety." We disagree. The jury could have believed Donna's testimony that the defendant followed less than a car's length behind Jennifer's car with his high beams on. Thus, the jury could have found that that defendant was following too closely for safety and impairing Jennifer's ability to drive safely by having his high beams on. *Cf. State v. Andrich,* 943 S.W.2d 841, 845-46 (Mo. Ct. App. 1997) (tailgating can constitute abuse and assault). Thus, the defendant has failed to prove "that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *Allard,* 148 N.H. at 705 (quotation omitted).

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.