Concord District Court
No. 2006-033

REBECCA MILLER

v.

BRIAN BLACKDEN

Submitted: October 18, 2006
Opinion Issued: November 30, 2006

Rebecca Miller, *pro se*, filed no brief.

*Penny S. Dean*, of Concord, by brief, for the defendant.

DALIANIS, J. The defendant, Brian Blackden, appeals the entry of a final protective order by the Concord District Court (*Sullivan*, J.) based upon

the court's finding that the defendant stalked the plaintiff, Rebecca Miller. *See* RSA 633:3-a (Supp. 2006). We affirm.

The plaintiff filed a stalking petition against the defendant. *See* RSA 633:3-a, III-a. At the final hearing, the plaintiff testified to the following. The defendant was a friend of, and had been hired by, her former boyfriend, Eric Raymond. Raymond had ended their relationship approximately six months earlier, and the defendant began stalking her after she had had Raymond arrested for breaking into her home.

On November 1, 2005, she received a phone call from the police telling her that the defendant was in his vehicle, parked near her home, "with his lights off." The officer told her "to be precautious [*sic*] and make sure all my doors and my windows were locked[] because [the defendant] was watching me." The plaintiff felt "nervous" after receiving this call and went with her children to spend the night with her mother. The following day, when she pulled into the parking lot of her son's school, she saw the defendant drive by her. She testified that "he . . . stared me down." After she had retrieved her son from school, she saw the defendant drive up the street and stare at her again. When she then drove to the courthouse to file the stalking petition, she saw the defendant traveling in the opposite direction. He made a U-turn and followed her to a traffic light. When she returned to her home after filing the petition, she saw the defendant waiting for her near her home.

The plaintiff testified that before the stalking began, the defendant removed some belongings of her former boyfriend from her parked car without her knowledge or consent. She informed a nearby police officer, who confronted the defendant and told him to leave the plaintiff alone.

The defendant admitted that he followed the plaintiff on six occasions on November 1, 2005. He testified that Raymond had hired him to conduct surveillance of the plaintiff in his capacity as a licensed private detective. When asked, he asserted that he could not disclose what Raymond wanted him to learn about the plaintiff because of "client privilege."

Following the hearing, the trial court entered a final protective order. The court found that the defendant engaged in stalking within the meaning of RSA 633:3-a, and that he was not immune from the stalking statute because he is a licensed private detective. The defendant moved for reconsideration, which the trial court denied. The defendant's business partner, Robert Miller, attempted to intervene in the action, but his request to do so was denied. Miller has not appealed the denial of his motion to intervene.

On appeal, the defendant first argues that the stalking statute, RSA 633:3-a, is vague on its face and as applied, in violation of his state and federal constitutional rights to due process. *See* N.H. CONST. pt. I, art. 15;

U.S. CONST. amends. V, XIV. Second, he asserts that the trial court erred when it failed to find that, as a licensed private detective, he was exempt from the provisions of the stalking statute. Third, he contends that the evidence was insufficient to support the trial court's order. Finally, he argues that the trial judge erred by not recusing himself. We address each argument in turn.

*I. Constitutionality of Stalking Statute*

RSA 633:3-a provides, in pertinent part, that a person commits the offense of stalking if he or she "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear." RSA 633:3-a, I(a). RSA 633:3-a, II(a) defines "course of conduct" as "2 or more acts over a period of time, however short, which evidences a continuity of purpose." Pursuant to RSA 633:3-a, II(a), "[a] course of conduct shall not include constitutionally protected activity, nor shall it include conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person." A "course of conduct" may include following, approaching or confronting the targeted person or a member of that person's immediate family. RSA 633:3-a, II(a)(2).

The defendant argues that the term "legitimate purpose" is unconstitutionally vague under the State and Federal Constitutions because it is undefined and does not sufficiently limit the trial court's discretion. We first analyze the defendant's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), citing federal authority for guidance only, *id.* at 233.

The constitutionality of a statute is a question of law, which we review *de novo*. *State v. Burke*, 153 N.H. 361, 364 (2006). "A statute may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *Id.* (quotation omitted); *Chicago v. Morales*, 527 U.S. 41, 52 (1999). Vagueness may invalidate a criminal law for either of two independent reasons. *Burke*, 153 N.H. at 364. "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," and "[s]econd, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Burke*, 153 N.H. at 364 (quotations omitted); *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

We addressed a similar challenge in *State v. Porelle*, 149 N.H. 420 (2003), where we construed an earlier version of the stalking statute, RSA

633:3-a (1996 & Supp. 1999). The earlier version of the statute defined stalking, in part, as appearing "on more than one occasion for no legitimate purpose in proximity to the residence, place of employment, or other place where another person is found under circumstances that would cause a reasonable person to fear for his personal safety." RSA 633:3-a, I(d)(4) (Supp. 1999); *Porelle*, 149 N.H. at 422. The defendant argued, among other things, that the phrase "for no legitimate purpose" was unconstitutionally vague on its face and as applied. *Porelle*, 149 N.H. at 422, 425.

In rejecting this contention, we defined a "legitimate purpose" as one that "is genuine or accordant with law." *Id.* at 425 (quotations omitted). We ruled that the phrase "no legitimate purpose," read in the context of the entire statute, which measures the offending conduct by an objective standard, did not give too much discretion to police officers. *Id.* As the presence or absence of a genuine or lawful purpose for appearing in proximity to another can readily be determined, we concluded that the phrase "no legitimate purpose" did not render the statute unconstitutionally vague, either on its face or as applied to the defendant. *Id.*

■ For similar reasons, we hold that the phrase "legitimate purpose" as used in RSA 633:3-a, II(a), does not render the current version of the statute unconstitutionally vague, either on its face or as applied to the defendant. Like the defendant in *Porelle*, the defendant here takes the phrase out of context. As we explained in *Porelle*, "By taking this phrase out of context, the defendant ignores the fact that the statute measures a defendant's actions by an objective standard, in that the offending conduct is only prohibited under circumstances that would cause a reasonable person to fear for his or her safety." *Id.* The phrase "legitimate purpose" read in the context of the entire statute, coupled with an objective standard, does not give too much discretion to the trial court. *See id.* This phrase, read in conjunction with the rest of the statute, does not require a person of common intelligence to guess at its meaning. *See id.* at 425-26.

Like the defendant in *Porelle*, the defendant in this case argues that "RSA 633:3-a is similar to loitering statutes that the United States Supreme Court has found unconstitutionally vague." *Id.* at 425; *see Morales*, 527 U.S. at 47, 64. We disagree for the same reasons that we set forth in *Porelle*. *See Porelle*, 149 N.H. at 425-26. As the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, *see id.* at 423, we reach the same result under the Federal Constitution as we do under the State Constitution.

## II. Exemption for Private Detectives

The defendant next asserts that, as a licensed private detective, his "clandestine surveillance" of the plaintiff was exempt from the stalking statute. *See* RSA 106-F:4, I-b(c) (2001) . He argues that, as a matter of law, his conduct was for a "legitimate purpose" because it was within the scope of his employment as a licensed private detective. RSA 633:3-a, II(a).

■ Unlike the stalking statutes in some other states, New Hampshire's stalking statute does not specifically exempt licensed private detectives. *Compare* RSA 633:3-a, II(a) (stalking does not include constitutionally protected activity or "conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person"), *with* La. Rev. Stat. Ann. § 14.40.2(F) (LexisNexis Supp. 2005) (provisions of stalking statute do not apply to licensed private investigators "acting during the course and scope of . . . employment and performing . . . duties relative to the conducting of an investigation"), S.C. Code Ann. § 16-3-1700(G) (West 2005) (stalking statute does not apply to "licensed private investigator performing services or an investigation as described in detail in a contract signed by the client and the private investigator") *and* Utah Code Ann. § 77-3a-101(1) (2003) (stalking injunctions may not be obtained against licensed private investigators acting in their official capacity).

■ Nor is it specifically an affirmative defense to a stalking petition or prosecution brought under New Hampshire law that the defendant is a licensed private detective as it is under stalking statutes in some other states. *See* Ark. Code Ann. § 5-71-229(c) (2005) (it is affirmative defense to stalking prosecution that actor is a licensed private investigator "acting within the reasonable scope of his or her duty while conducting surveillance on an official work assignment"); N.D. Cent. Code § 12.1-17.07.1(4) (1997) (defense that private investigator was acting within scope of employment); Wash. Rev. Code § 9A-46.110(3) (2006) (defense to crime of stalking that defendant is licensed private investigator "acting within the capacity of his or her license" as provided by statute governing such investigators).

■ Rather, New Hampshire's stalking statute exempts only constitutionally protected conduct and conduct "that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person." RSA 633:3-a, II(a). Pursuant to RSA 633:3-a, IV, the defendant has the burden to show that his conduct was necessary to accomplish a legitimate purpose. RSA 633:3-a, IV provides:

> In any complaint, information, or indictment brought for the enforcement of any provision of this statute, it shall not be necessary to negate any exception, excuse, proviso, or exemption contained herein and the burden of proof of any exception, excuse, proviso, or exemption shall be upon the defendant.

That the defendant's conduct was necessary to accomplish a legitimate purpose is an "exception, excuse, proviso, or exemption" upon which the defendant has the burden of proof. *Cf. State v. Small*, 150 N.H. 457, 461-62 (2004) (assuming without deciding that "legitimate purpose" is defense to offense of stalking upon which defendant has burden of proof).

The defendant contends that he met this burden of proof by testifying that he secretly followed the plaintiff in his capacity as a licensed private detective. We disagree.

As we held in *Porelle*, 149 N.H. at 425, conduct that is necessary to accomplish a "legitimate purpose" refers to conduct that is "accordant with law." To prove that the conduct in which he was engaged was necessary to accomplish a legitimate purpose, the defendant was required to show that the conduct was lawful, irrespective of the stalking statute. *See Nastal v. Henderson & Associates Invest.*, 691 N.W.2d 1, 7 (Mich. 2005).

To meet this burden, the defendant had to do more than merely testify that he was a licensed private detective who was hired to follow the plaintiff. He also had to show that the purpose for which he was hired was itself lawful. *See id.* at 7-8. For instance, had he been hired to follow the plaintiff so that a third party could kill her, the purpose for which he was hired was not lawful. *See* RSA 106-F:9 (Supp. 2005) (investigators must file surety bond that is "so conditioned that the person bonded shall conduct his or her business in a lawful and honest manner without committing, compounding, aiding or abetting the commission of any criminal offense"); *see also Remsburg v. Docusearch*, 149 N.H. 148, 154-55 (2003) (ruling that private investigators have duty to exercise reasonable care in disclosing third party's personal information to client, in part, because of foreseeable risk that such information could be used by stalkers to harm victim). Similarly, had he been hired to follow the plaintiff for the purpose of causing her to fear for her own personal safety, that purpose also would be unlawful. We do not construe RSA 633:3-a, II(a) as authorizing stalking by proxy.

In this case, the defendant refused to testify as to why he was hired. Accordingly, by his own election, he failed to demonstrate that the purpose for which he was hired was lawful. Thus, the trial court did not err when it ruled that the defendant's conduct was not for a "legitimate purpose"

merely because he engaged in it in his capacity as a licensed private detective.

## III. Sufficiency of the Evidence

The defendant next contends that the evidence was insufficient to support the trial court's entry of a final order. He implies that the evidence did not support a finding that he engaged in conduct that constituted stalking. He also asserts that the evidence did not support a finding that his conduct would have caused a reasonable person to fear for his or her personal safety.

We review sufficiency of the evidence claims as a matter of law and uphold the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law. *Fichtner v. Pittsley*, 146 N.H. 512, 515 (2001).

The evidence included testimony that the defendant was hired by the plaintiff's former boyfriend, after the couple ended their relationship and that the stalking began after a complaint by the plaintiff caused the boyfriend to be arrested. The plaintiff testified that the police told her to take precautions and lock all of her doors and windows because the defendant was watching her. There was also evidence that: the defendant was in a parked vehicle near the plaintiff's home with the vehicle's lights turned off; the next day, he followed her to her son's school and "stared [her] down"; he followed her when she came to the courthouse to file the petition; and, when she returned home from filing it, the defendant was waiting for her near her home.

Thus, there was evidence that the defendant followed, approached or confronted the plaintiff two or more times over a period that evidenced a continuity of purpose. *See* RSA 633:3-a, II(a)(2). In addition, we conclude that this evidence supports the trial court's finding that the defendant's conduct would have a caused a reasonable person to fear for his or her personal safety. Finally, we need not address the defendant's contention that no reasonable person could fear something of which he or she was not aware because, in this case, the plaintiff's petition was based upon conduct of which she was aware. *Cf. State v. Gubitosi*, 152 N.H. 673, 682-83 (2005) (holding that communication between defendant and third party of which victim was later made aware supported finding of stalking).

## IV. Recusal of Trial Judge

Finally, the defendant argues that the trial judge erred when he failed to recuse himself upon learning that Miller is the defendant's business partner. He asserts that the judge was required to recuse himself because

he recused himself from other cases involving Miller. The defendant contends that the judge's prior decisions to recuse himself indicate that the judge was biased.

■ Canon 3E(1) of the Code of Judicial Conduct requires disqualification of a judge in a proceeding in which the judge's impartiality might reasonably be questioned and to avoid even the appearance of impropriety. *See* SUP. CT. R. 38, Canon 3E(1); *see also Blaisdell v. City of Rochester*, 135 N.H. 589, 593 (1992). "Whether an appearance of impropriety exists is determined under an objective standard, *i.e.*, would a reasonable person, not the judge himself, question the impartiality of the court." *Blaisdell*, 135 N.H. at 593. "The test for the appearance of partiality is an objective one, that is, whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." *Taylor-Boren v. Isaac*, 143 N.H. 261, 268 (1998) (quotation omitted).

■ We conclude that a reasonable person would not question the trial judge's impartiality in this case on the ground that the judge had previously recused himself from cases involving Miller. The instant case does not involve Miller. He is *not* a party to the petition. Even if he were a party, recusal would not necessarily be mandated. *See Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 235-36 (3d Cir. 2001) (judge not required to recuse self even though judge recused self in earlier action out of excess caution); *Oslin v. State*, 543 N.W.2d 408, 417 (Minn. Ct. App. 1996) (judge who had previously recused himself from case could preside over matter, where he never explained why he originally disqualified himself, and there was no showing that his original recusal was prompted by any interest in case). Moreover, the defendant has not provided a record to establish why the trial judge recused himself from matters involving Miller. Under these circumstances, we hold that the trial judge did not err when he did not recuse himself upon learning that Miller was the defendant's partner.

We decline to address the defendant's remaining arguments because he has not preserved them for our review. Specifically, he argues that: (1) the trial court's order violated his constitutional rights to bear arms and to due process; and (2) the court's order unlawfully abrogated the rights of his detective partners. *See* N.H. CONST. pt. I, arts. 2-a, 12; U.S. CONST. amends. II, XIV. The defendant, however, has failed to demonstrate that he raised these arguments to the trial court and, thus, he has not preserved them for our review. *See N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 619 (2004). It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial. *Id.*

As the appealing party, the defendant has the burden of demonstrating that he raised his arguments to the trial court. *See id.* Miller's attempt to raise some of these arguments did not preserve them for our review. Miller was not a party to this proceeding and thus any arguments he attempted to make were not before the trial court.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.