Strafford
No. 2008-834

THE STATE OF NEW HAMPSHIRE

v.

JAY NEEPER

Argued: January 13, 2010
Opinion Issued: March 25, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Jay Neeper, was convicted of aggravated felonious sexual assault, *see* RSA 632-A:2 (2007), following a jury trial in the

Superior Court (*Brown*, J.). On appeal, he argues that the trial court erroneously denied his motions for a mistrial. We affirm.

The jury could have found the following facts. The defendant's daughter and the victim were friends on the same cheerleading squad. The daughter, a diabetic, was required to test her blood sugar several times a day with a diabetes monitor.

On February 16, 2007, the victim slept over at the defendant's two-bedroom apartment in Barrington, where the daughter was living at the time. The daughter and the victim practiced their cheerleading routines in the daughter's bedroom, and then went to sleep. The defendant and his nine-year-old son slept in the living room. The victim testified that she woke up at around 2:00 a.m. because she felt the defendant's hand "rubbing and patting" her vagina. The victim woke the daughter and the defendant left the girls' room.

The daughter immediately confronted the defendant and accused him of sexually assaulting the victim. The defendant stated that he did not know what she was talking about, got up, and left the room. The daughter then told the defendant that they were leaving. In spite of the lateness of the hour, the defendant said that was "fine" and did not try to stop them or ask where they were going. The daughter and the victim left the apartment and called the defendant's brother, who came to pick them up. The brother flagged down Officer Jared Welman, a Lee police officer, and they went to the Lee police station to be interviewed.

At approximately 5:00 or 6:00 a.m., Officer Welman and Officer Christopher Plummer, a Barrington police officer, went to the defendant's apartment. Officer Plummer explained that the police were there to talk to him because they "found" his daughter and the victim walking down Route 4. In response, the defendant explained that he had argued with his daughter because the victim refused to call her mother and the girls refused to go to sleep, and that, afterwards, she and the victim left. He also stated that, before they left, "[t]hey accused me of . . . " but then he stopped talking.

At trial, on direct examination, the prosecutor asked Lieutenant Jacob Banaian, a Barrington police officer, whether the defendant had attempted to contact him or the Barrington police. Lieutenant Banaian stated that the defendant had not. The defendant objected and the trial court overruled the objection. Lieutenant Banaian testified that he spoke with the defendant on February 18 and informed him of the charges against him. Then, the following exchange occurred between the prosecutor and Lieutenant Banaian:

> Q. Okay. And what did he say in response to you reading the charge involving [the victim]?

A. He said he did not understand.

Q. Okay.

A. And that . . .

Q. And at that point, you — there were no further questions asked, correct?

A. Right. He said he did not understand, he would like to talk with an attorney, so there were no further questions.

Counsel for the defendant objected, and moved for a mistrial. The court held a hearing outside of the presence of the jury. During the hearing, the defendant introduced a copy of Lieutenant Banaian's police report, which stated that the defendant was arrested on February 18 and subsequently met with Lieutenant Banaian at the Barrington Police Department. Lieutenant Banaian introduced himself to the defendant, who stated that he did not understand what was happening. Lieutenant Banaian read the charges to the defendant and "informed him if he would like to talk to me I would like to go over his rights." The report also indicated that, although Lieutenant Banaian apparently did not read the defendant his *Miranda* rights, he showed the defendant "the rights form." In response, the defendant stated, "I don't understand what is going on, so I would like an attorney."

The court found that the testimony at issue was "*Doyle*-like" and that the prosecutor did not engage in any misconduct. *See Doyle v. Ohio*, 426 U.S. 610 (1976). The court also found that there was "a little bit of a trail within the records that lead up to [Lieutenant Banaian's comment]." The court denied the defendant's motion for a mistrial. The court issued a curative instruction to the jury to "disregard the . . . last two questions from the State and the lieutenant's answers to them," and, in particular, the references to the defendant's exercise of his constitutional rights. The court instructed the jury that it could not "draw an inference as to guilt or innocence" based upon the fact that the defendant exercised his rights, and emphasized the importance of compliance with the instruction. The court then asked the jurors to indicate "by a show of hands" whether they could disregard Lieutenant Banaian's answer. The court asked the jurors whether they could "appreciate . . . the principles of constitutional law," and they responded affirmatively.

The defendant testified and offered an explanation of his conduct that night. He said his daughter kept her diabetes monitor on the front of the bed because he routinely checked it at night. He also testified that she did not know that he checked her monitor at night. The defendant stated that he and his daughter frequently argued about how she monitored her diabetes, and that she had high levels of insulin on the night of the assault.

The defendant testified that he went into her bedroom after she and the victim fell asleep to check her monitor. However, he could not find it and, when someone started moving, he left to avoid a confrontation with his daughter. The defendant stated that his daughter yelled at him and "accused [him] of a bunch of stuff." He testified that he did not stop her from leaving the apartment because a therapist had recommended that he manage her outbursts by letting her "go for a walk and cool down." However, his daughter testified that the defendant never checked her diabetes monitor and they had not discussed it on the night of the assault.

At the conclusion of the State's closing argument, the defendant renewed his request for a mistrial, contending that the State's argument encompassed his post-arrest silence. The court implicitly denied the defendant's motion.

On appeal, the defendant argues that the State improperly elicited testimony that he invoked his constitutional rights post-arrest and after receiving *Miranda* warnings, and commented on that testimony when the prosecutor asserted in his closing argument that the defendant "never told anyone" his exculpatory story. The defendant relies upon Part I, Article 15 of the State Constitution and the Fifth and Fourteenth Amendments to the Federal Constitution. The State counters that the court's curative instruction alleviated any prejudice resulting from Lieutenant Banaian's testimony, and disputes that the prosecutor commented on the defendant's post-*Miranda* silence in his closing argument. Specifically, the State contends that the prosecutor was referring to the defendant's failure to explain himself to his daughter, the victim, and Officer Plummer on the night of the assault. The State also argues that any error was harmless.

■ We first address the defendant's claims under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983). In *Doyle*, 426 U.S. at 617-18, the United States Supreme Court "held that the requirement of fundamental fairness inherent in the due process guarantee bars the State from impeaching a defendant with evidence that he remained silent after arrest and *Miranda* warnings." *State v. Coppola*, 130 N.H. 148, 150-51 (1987), *cert. denied*, 493 U.S. 969 (1989); *see* N.H. CONST. pt. I, art. 15. Accordingly, the State may not use "the defendant's silence in response to [*Miranda*] warnings to impeach the defendant's credibility, or . . . in its case-in-chief as substantive evidence of the defendant's guilt." *State v. Demeritt*, 148 N.H. 435, 439-40 (2002) (citation omitted); *see State v. Munson*, 126 N.H. 191, 193 (1985) ("The suspect's silence in the face of accusation may not be used against him at trial." (quotation omitted)); *Doyle*, 426 U.S. at 617-18. However, the

defendant's silence towards private parties is not constitutionally protected. *State v. Brown*, 128 N.H. 606, 613 (1986).

## I. *Lieutenant Banaian's Testimony*

■ We first consider whether the trial court correctly declined to declare a mistrial following Lieutenant Banaian's testimony that the defendant exercised his constitutional rights. "Mistrial is the proper remedy only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constitutes an irreparable injustice that cannot be cured by jury instructions." *State v. Ellsworth*, 151 N.H. 152, 154 (2004) (quotation omitted); *see State v. Remick*, 149 N.H. 745, 747 (2003). "The trial court is in the best position to determine what remedy will adequately correct the prejudice, . . . and absent an unsustainable exercise of discretion, we will not overturn its decision." *Ellsworth*, 151 N.H. at 154. "A mere reference by a witness to a defendant's silence, without more, however, does not necessarily require a mistrial." *State v. Spaulding*, 147 N.H. 583, 587 (2002); *see Remick*, 149 N.H. at 747. "An instruction to disregard the reference to silence is generally sufficient in the absence of prosecutorial misconduct or comment that cannot be cured by a cautionary jury instruction." *Spaulding*, 147 N.H. at 587; *see Remick*, 149 N.H. at 747. We presume that jurors follow the court's instructions. *Remick*, 149 N.H. at 747.

The defendant argues that the prosecutor "improperly elicited testimony about [the defendant's] silence earlier in the trial," pointing to the prosecutor's questions to Lieutenant Banaian and other witnesses as to whether the defendant called the police after his daughter and the victim left the apartment, whether he asked about their welfare, and whether he contacted the police between the assault and his arrest. The defendant contends that the prosecutor repeatedly highlighted his contact with Lieutenant Banaian to emphasize his post-arrest, post-*Miranda* silence, and that the prosecutor's question regarding the defendant's response after Lieutenant Banaian read the charges to him called for the defendant's post-*Miranda* statements. The defendant also argues that the prejudice resulting from Lieutenant Banaian's comment was exacerbated because the jury was not aware that the defendant had just received *Miranda* warnings. The State concedes that Lieutenant Banaian's comment was inadmissible, but contends that the court correctly denied the defendant's motion for a mistrial because the court's curative instruction ameliorated any resulting prejudice, and the court found no prosecutorial misconduct.

■ We cannot find that the trial court unsustainably exercised its discretion when it denied the defendant's motion for a mistrial. While we

agree that some of the prosecutor's questions preceding Lieutenant Banaian's remark were troublesome, the prosecutor's last question called for a yes or no response and thus did not seek to elicit testimony about the defendant's post-arrest, post-*Miranda* silence. After establishing that Lieutenant Banaian read the charges to the defendant and that the defendant stated that he did not understand them, the prosecutor asked, "there were no further questions asked, correct?" Lieutenant Banaian's statement that the defendant said "he would like to talk with an attorney, so there were no further questions" was not responsive. We thus agree with the trial court that the prosecutor did not engage in misconduct.

As for the argument that any prejudice was heightened because the jury was unaware that the defendant had been shown *Miranda* warnings, the defendant simply fails to explain why this is so. We find that any prejudice resulting from Lieutenant Banaian's testimony was alleviated by the trial court's curative instruction and affirmative response from the jurors that they could comply with the court's instructions. *See Remick*, 149 N.H. at 747; *Spaulding*, 147 N.H. at 587.

The State also argues that any error by the trial court was harmless. However, we need not address this argument because the trial court did not erroneously admit Lieutenant Banaian's testimony. *See Spaulding*, 147 N.H. at 588; *Demeritt*, 148 N.H. at 440.

## II. The Prosecutor's Closing Argument

We next consider whether the prosecutor referred to the defendant's post-*Miranda* silence in his closing argument. The defendant contends that the prosecutor's argument was improper because he "invited the jury to use the post-*Miranda* silence improperly," and "stress[ed] the time period between the incident and trial, the bulk of which was post-*Miranda*" to highlight the post-*Miranda* silence. The State contends that the prosecutor's comment that the defendant "never told anyone anything" clearly referred to the defendant's statements on the night of the assault and not to post-*Miranda* silence.

During his closing argument, counsel for the defendant referred explicitly to the defendant's statement to Officer Plummer on February 17 that "They accused me of . . . ", and argued that the fact that the defendant stopped speaking was "consistent with innocence." The prosecutor, in response, repeatedly discussed the defendant's actions and words on February 17, the night of the assault, and commented on his interaction with Officer Plummer the next morning, disputing the defendant's account of that conversation. In that context, the prosecutor stated that the defendant "never told anyone" that he went into his daughter's bedroom to check her diabetes monitor. Specifically, he asserted that:

The idea that somehow the police have prevented Mr. Neeper from giving his version of events, his complete version of events, a version of events which has a very innocent explanation for why he went into the room in the first place, which is this diabetes monitor, is not true. Telling you that [the victim's] story has changed is actually quite humorous because, in fact, it is Mr. Neeper's version of events that has changed dramatically, because on February 17th, 2007, this diabetes monitor thing is never put into play. You don't hear a word about it. And he is given an opportunity, folks, to say what he needs to say.

The State also argued that the defendant "never told anyone there was a perfectly legitimate and innocent reason why he would have gone into the room that evening," and that the defendant's explanation "comes a little too lately [sic] and is a little too different from what was said on the night in question by the defendant."

Following the State's closing argument, the defendant again moved for a mistrial, contending that the State's argument "broadly asserting . . . he never told anyone . . . was not focused to the contact with the police on the night in question" and included "his post-arrest silence." After hearing arguments from the parties, the court stated, "Okay," and immediately began instructing the jury. The court did not issue a curative instruction.

■ Taken in context, the prosecutor's comment that the defendant "never told anyone" refers to his statements immediately following the assault and not his post-*Miranda* silence. *See Spaulding,* 147 N.H. at 588 (prosecutor did not make reference to witness's post-*Miranda* silence); *Taylor v. State,* 72 S.W.3d 882, 888 (Ark. Ct. App. 2002) (finding that, in context, prosecutor's statement during closing argument that defendant "never said it was an accident" was not reference to defendant's decision not to testify); *see also State v. Gaiolas,* 116 N.H. 216, 217 (1976) ("Whether due process is violated is not to be determined by isolation of a phrase from the record of the prosecution's argument."). Accordingly, we cannot conclude that the trial court unsustainably exercised its discretion when it declined to declare a mistrial.

Because the State Constitution is at least as protective as the Federal Constitution under these circumstances, *see Anderson,* 141 N.H. at 169, we reach the same result under the Federal Constitution. Given this result, we need not address the parties' remaining arguments.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.