Hillsborough-northern judicial district
No. 2006-456

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN DESCHENES

Argued: June 14, 2007
Opinion Issued: August 24, 2007

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Stephen Deschenes, appeals his convictions, after a jury trial, for aggravated felonious sexual assault, *see* RSA 632-A:2, I (2007), arguing that the superior court unsustainably exercised its discretion by: (1) allowing the State to impeach his credibility as a witness with three prior convictions for assault and battery, including one in which the victim was female; (2) allowing the State to offer extrinsic evidence to impeach his credibility; and (3) refusing to instruct the jury to weigh, with "great caution and care," the testimony of a police officer

concerning an unrecorded post-arrest interrogation of the defendant. We affirm.

## I

The jury could have found the following facts. At around midnight on June 7, 2003, the victim went to a bar on Lake Avenue in Manchester. She left at about 1:30 a.m. Just outside the bar, the defendant attracted the victim's attention and invited her to his apartment for a beer. She accepted.

The victim and the defendant walked to the building where the defendant resided and went upstairs to his one-room apartment. He went in first and turned the stereo on "pretty loud." When the victim entered the apartment, she sat down on the defendant's bed, the only available piece of furniture.

After the victim sat down, the defendant walked over to a nightstand. He then turned to face her, while holding a knife. He put the knife about six inches from the victim's throat, and told her to take off her clothes. She did so, and the defendant followed suit.

Once both the victim and the defendant were undressed, the defendant held the victim's head down and forced her to perform oral sex. He then had intercourse with her while he held her hands down.

At trial, the defendant characterized his encounter with the victim differently. In particular, he claimed that the victim agreed to have sex with him in exchange for drugs, and that after they had sex, she began yelling at him and threatening him when he failed to provide the promised drugs.

Fifteen or twenty minutes after the defendant had intercourse with the victim, he told her she was free to go. At that point, both the victim and the defendant put their clothes back on and left the building through a back door. When she reached the street, the victim began running in the direction of her home. On her way, she encountered several Manchester police officers and told them she had just been raped.

In late July, the defendant was interviewed by Manchester Police Detective Richard Brennan (Detective Brennan). During the interview, Detective Brennan asked whether he had ever been arrested. The defendant admitted that he had been arrested, but did not offer that he had also been convicted nine times.

The defendant was arrested in August for the alleged rape and interrogated by Manchester Police Officer Dan Brennan (Officer Brennan). Officer Brennan did not record the interrogation on either audiotape or videotape. Subsequently, the defendant was indicted on several counts of aggravated felonious sexual assault.

Before trial, the State filed a motion *in limine* seeking to admit the defendant's prior convictions solely for the purpose of impeaching his credibility in the event he testified. The Trial Court (*Abramson*, J.) granted the motion in part, allowing the State to use seven of the nine convictions it sought to introduce, including the three at issue in this appeal: (1) a February 1994 felony conviction for assault and battery on a female household member; (2) an April 1994 felony conviction for assault and battery; and (3) a November 1994 felony conviction for assault and battery. The trial court also allowed, for impeachment purposes only, the admission of: (1) a July 2000 misdemeanor conviction for disobeying a police officer; (2) a July 2002 conviction for giving a false name to a police officer; (3) an August 1996 felony conviction for receiving stolen property, a crime the trial court deemed to involve dishonesty; and (4) a May 1996 felony conviction for unarmed robbery, a crime the trial court considered sufficiently different from the charged offenses in this case so as not to create undue prejudice. The two convictions the trial court excluded were a 1996 conviction for armed robbery, which it deemed too prejudicial in a trial on allegations that involved the use of a weapon to threaten the victim, and a 1993 conviction for assault and battery, which the trial court excluded for being more than ten years old.

In response to the defendant's motion for clarification and/or reconsideration, the trial court ruled that "the State is precluded from referencing that the defendant's prior conviction for assault and battery of a female household member, date of conviction being February 18, 1994 . . . involved 'a female household member.'"

At trial, the defendant elected to testify. During a conference in chambers, counsel for the State asked for permission to inquire about the February 1994 assault and battery conviction in the following way: "Mr. Deschenes, were you convicted of assault and battery in that you did assault and beat Michelle Fontaine?" Defense counsel objected, arguing that the proposed question would "bring[] into evidence half of the prejudicial information that is cited in [the trial court's] ruling, which is that he assaulted a female." In response, the Trial Judge (*Barry*, J.) ruled:

> [T]he State can use the prior conviction. You can use the essence or the body of what's in the complaint on each one with the limitation that you cannot use the words "a household member" with regard to the complaint or indictment that Judge Abramson has previously ruled on, and you cannot go into the underlying facts beyond that nor ask about the sentences imposed in any instance.

On direct examination, the defendant testified that he was convicted of assault and battery three times in 1994. On cross-examination, he answered in the affirmative when asked whether he "assault[ed] and beat Michelle Fontaine" in February 1994. When the defendant's testimony concluded, the trial judge instructed the jurors that they could consider the defendant's convictions "only with regard to [his] credibility . . . that is, in deciding whether or not [they] believe[d] him and for no other purpose whatsoever." The trial judge gave another more detailed limiting instruction before the jury retired to deliberate.

Also on cross-examination, the State asked the defendant about the interview Detective Brennan had conducted with him the month before his arrest. Specifically, the defendant was asked whether Detective Brennan asked him about his criminal history and whether he told Detective Brennan about his prior convictions. After the defendant said that the detective "may have" asked him about his criminal history but that he did not remember, counsel for the State gave the defendant a document, without objection, to refresh his recollection. Thereafter, the defendant repeated his testimony that Detective Brennan "may have" asked him about his criminal history. Then, when asked, one by one, whether he had told the detective about his prior seven convictions, the defendant gave answers such as "I may and I may not have."

Subsequently, the State called Detective Brennan. He testified that he asked the defendant "if he had ever been arrested before" and that the defendant "stated yes, he had been" but did not disclose any of the seven convictions admitted into evidence. Detective Brennan did not testify that he asked the defendant whether he had ever been convicted of a crime. Based upon Detective Brennan's rebuttal testimony, the State contended, during its closing argument, that the defendant lied about his criminal record in his interview with Detective Brennan.

Finally, after the close of the evidence, the defendant requested the following jury instruction:

> The State has offered into evidence statements allegedly made by the defendant to the police. These statements were made at the Manchester police station during an interrogation conducted while the defendant was in the custody of the Manchester Police Department. The statements were not recorded. Because of the absence of a recording of these statements, you should weigh the statement's usefulness with great caution and care. As well, the failure of the police to tape record the interrogation may be considered by you in evaluating the testimony and credibility of the officer as to what the defendant actually said.

The trial judge denied the defendant's request.

After the defendant was convicted, he filed a motion for a new trial, arguing that the admission of the three 1994 assault and battery convictions was unfairly prejudicial because those convictions, like his current prosecution, involved crimes of violence, and that the trial judge's ruling on a similar issue in a different case entitled him to a new trial. The trial judge denied the motion. This appeal followed.

## II

The defendant first argues that the trial court unsustainably exercised its discretion by allowing the State to impeach his credibility with evidence of his three 1994 assault and battery convictions. More specifically, he contends that: (1) the 1994 convictions were not especially probative because the State could have "fully accomplish[ed]" the intended impeachment of his credibility with the four other convictions that were admitted; (2) admitting evidence of convictions for assault and battery was unfairly prejudicial in a prosecution for crimes involving the use of force; and (3) admitting evidence that one of the 1994 convictions involved a female victim was especially prejudicial because the victim in this case was also a woman. We disagree.

We review a trial court's ruling to admit evidence of prior convictions under an unsustainable exercise of discretion standard. *State v. McGill*, 153 N.H. 813, 815 (2006). To show an unsustainable exercise of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ The defendant's 1994 convictions were admitted pursuant to New Hampshire Rule of Evidence 609 which provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he or she was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

N.H. R. Ev. 609(a). In the context of New Hampshire Rule of Evidence 403, we have explained that

> [f]actors to consider in balancing a conviction's probative value against its prejudicial effect include the impeachment value of the

prior conviction, the date of the conviction and the witness's subsequent history, the degree of similarity between the past crime and any conduct of the witness currently at issue, the importance of the witness's testimony, and the centrality of the credibility issue.

*Zola v. Kelley*, 149 N.H. 648, 655 (2003). While we use similar factors when conducting the balancing tests established by Rules 403 and 609(a), those two tests strike different balances, and the Rule 609(a) test is the more exclusionary. *See id.* at 653.

██ "Prior convictions are admissible to impeach a defendant even if the crimes do not directly involve a lack of veracity." *State v. Demeritt*, 148 N.H. 435, 442 (2002) (quotation and brackets omitted). This is "because the jury should be informed what sort of person is asking them to take his word," and "[l]ack of trustworthiness may be evinced by his *abiding and repeated* contempt for laws which he is legally and morally bound to obey." *Id.* (quotation omitted; emphasis added). Again in the Rule 403 context,

[e]vidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case.

*Zola*, 149 N.H. at 655 (quotation omitted). Finally, because evidence of a prior crime is inherently prejudicial to the defendant, *State v. Skidmore*, 138 N.H. 201, 202 (1993), a trial court must provide a limiting instruction when evidence of prior convictions is introduced to impeach a defendant's credibility, *State v. Cassell*, 140 N.H. 317, 318 (1995).

In its pre-trial order on the State's motion *in limine*, the trial court cited *Demeritt*, 148 N.H. at 442, for the proposition that "[l]ack of trustworthiness may be evinced by [a witness's] abiding and repeated contempt for laws which he is legally and morally bound to obey." Based upon that understanding of probative value, the trial court reasoned that because none of the 1994 convictions "involve[d] a sexual assault of the victim," they were sufficiently different from the defendant's current charges to diminish their prejudicial effect and make them admissible under the balancing test of New Hampshire Rule of Evidence 403. We note that while the trial court referred to the Rule 403 balancing test, its initial reference to that test makes clear that its reference to Rule 403 was akin to a scrivener's error; what it describes as the Rule 403 balancing test in its order is, in actuality, the more exclusionary Rule 609(a) balancing test. *See Zola*, 149 N.H. at 653. Accordingly, we, like both parties, will

treat the trial court's order as having applied the correct balancing test—the one stated in Rule 609(a).

We find no unsustainable exercise of discretion in the trial court's application of the Rule 609(a) balancing test. The defendant's primary argument is that in light of the other four convictions admitted for impeachment purposes, the three 1994 assault and battery convictions had only minimal impeachment value but, as convictions for crimes of violence, had a considerable prejudicial effect.

■ Given the probative value of a witness's "abiding and repeated contempt for laws," *Demeritt*, 148 N.H. at 442 (quotation omitted), we conclude that the number of convictions a witness has—which may evidence the degree to which his contempt for laws is "abiding and repeated"—may also be probative of trustworthiness. Accordingly, we cannot agree that because the defendant was "fully" impeached by the four other convictions, the trial court was compelled to find that the three at issue had only minimal impeachment value. Moreover, to the extent that "abiding and repeated contempt for laws" evinces a lack of credibility, three convictions for the same or similar offenses within nine months could be especially probative, even when those convictions occurred nearly ten years ago and come close to invoking the "ten-year presumptive bar of Rule 609(b)," *Zola*, 149 N.H. at 655. Similarly, the fact that the three disputed convictions involved crimes different from those implicated in the four other convictions might suggest a relatively broad-spectrum contempt for the law, which may also be probative of truthfulness.

■ With regard to the prejudicial effect of convictions for crimes that do not involve dishonesty or false statement, there are two pertinent considerations: (1) the inherent ability of a crime "to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action," *id.*; and (2) when the witness is also the defendant, the similarity between the conviction introduced for impeachment purposes and the crime for which the defendant is on trial, *id.* While the trial court did not address the first aspect of prejudicial effect, it would not have unsustainably exercised its discretion by determining that assault and battery is not as inherently horrifying as some other felonies that a party could seek to introduce for impeachment purposes.

The second aspect of prejudicial effect is best understood as being measured along a continuum. At the end of the continuum we would label "least prejudicial" would be a conviction for the crime that is the most different from the one for which the defendant is on trial. At the "most prejudicial" end would be a conviction for the very same crime for which

the defendant is on trial. Here, the disputed assault and battery convictions fall somewhere in between. According to the defendant, his assault and battery convictions, as convictions for crimes of violence, are substantially similar to the crime for which he was on trial. The trial court drew a different line, based upon the lack of a sexual element in the 1994 crimes, and determined that assault and battery was materially different from aggravated sexual assault. Neither view is illogical or unreasonable, and deciding which one to adopt is a quintessential exercise of judicial discretion. Moreover, while the trial judge did allow the State to elicit the fact that one of the defendant's 1994 assault and battery victims was named Michelle, there was not a sexual element to that crime, and the jury was not informed that it occurred in a domestic context, both of which diminish the prejudicial effect of that conviction.

■ We will reverse the trial court's decision to admit the defendant's three 1994 assault and battery convictions only if it was clearly untenable or unreasonable to the prejudice of the defendant's case. *See McGill*, 153 N.H. at 815. It was not. It may well be reasonable to consider a person with seven felony convictions to be more contemptuous of the law than a person with four such convictions, and it may also be reasonable to view the crime of assault and battery as sufficiently different from the crime of aggravated felonious sexual assault that the prejudicial value of the former would not outweigh its probative value in a prosecution for the latter. While it appears that the trial court reasonably could have ruled in the defendant's favor, that is not the test. Our review is limited to determining whether the trial court unsustainably exercised its discretion. Finally, because the decisions of the superior court have no precedential effect, and because decisions about the admissibility of evidence are fact driven, case specific and subject to judicial discretion, we decline the defendant's invitation to analyze the evidentiary rulings in this case in light of the order from another case before the same trial judge submitted in support of the defendant's motion for a new trial. To conclude, we hold that the trial court's decision to admit the disputed convictions did not constitute an unsustainable exercise of discretion that warrants reversal of the defendant's convictions.

### III

The defendant next argues that the trial court unsustainably exercised its discretion by allowing the State to introduce testimony from Detective Brennan concerning the pre-arrest interview with him in July 2003. Specifically, the defendant contends that New Hampshire Rule of Evidence 608(b) prohibits a party from using extrinsic evidence to prove

specific instances of conduct in order to attack the credibility of a witness. The State counters that the trial court properly admitted Detective Brennan's testimony to rebut the defendant's evasive answers on cross-examination, and that even if the trial court erred by allowing the testimony, the error was harmless. We agree with the State that upon this record, any error in allowing Detective Brennan's testimony was harmless beyond a reasonable doubt. *See State v. Taylor*, 141 N.H. 89, 92 (1996).

■ It is well settled that the erroneous admission of evidence may be harmless if the State proves, beyond a reasonable doubt, that the verdict was not affected by the admission. *State v. Wall*, 154 N.H. 237, 245 (2006). An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *Id.*

The defendant argues that the admission of Detective Brennan's rebuttal testimony, which the State mentioned in its closing argument, was especially damaging because credibility was an important issue at trial. While we acknowledge the importance of the defendant's credibility to his defense, we must nonetheless accurately characterize the disputed testimony and place it in context to properly determine whether its introduction affected the jury's verdict.

To begin, it is not at all clear that the disputed testimony even qualifies as impeachment evidence. On direct examination, the defendant said that he may or may not have told Detective Brennan about his prior convictions. Thus, when Detective Brennan testified that the defendant had not done so, he did not necessarily expose the defendant as untruthful in his trial testimony but, rather, merely confirmed what the defendant had already admitted as a possibility, *i.e.*, that he had not told the detective about his prior convictions. Moreover, the detective never testified that he had asked the defendant about prior convictions, only that he had asked about prior arrests. At most, then, the detective's testimony established that the defendant interpreted a question about arrests as not calling for an answer regarding the convictions, if any, resulting from those arrests. The defendant's decision not to mention convictions in response to a question about arrests could have had little if any effect upon the jury's appraisal of his credibility.

■ In context, it is also important to note that in this case, the jury had to assess both the defendant's and the victim's credibility when determining whom to believe. The record before the jury included evidence that bolstered the victim's credibility, such as testimony about

her demeanor from the police officers she encountered shortly after she left the defendant, which supported a finding that she was telling the truth about the assault she reported, rather than retaliating against the defendant for failing to provide her with the drugs he says he had promised her in exchange for sex. The record also included evidence that undermined the defendant's credibility, including his prior convictions for crimes involving dishonesty. Against the backdrop of all the other credibility evidence the jury had to consider, and the relatively benign character of Detective Brennan's testimony, we conclude, as a matter of law, that the disputed testimony could not have affected the verdict of a reasonable jury. Accordingly, if its admission was erroneous, the State has carried its burden of proving, beyond a reasonable doubt, that any such error was harmless. *Wall*, 154 N.H. at 245.

## IV

Finally, the defendant argues that the trial court erred by refusing to give the jury instruction he requested concerning the "great caution and care" the jury should use in weighing the usefulness of testimonial evidence about an unrecorded police interview when such evidence is introduced by the State. Specifically, the defendant asks us to follow *Commonwealth v. DiGiambattista*, 813 N.E.2d 516 (Mass. 2004), in which the Supreme Judicial Court of Massachusetts, in an exercise of its superintendence powers, *id.* at 531-32, instructed the Massachusetts trial courts that

> when the prosecution introduces evidence of a defendant's confession or statement that is the product of a custodial interrogation or an interrogation conducted at a place of detention (e.g., a police station), and there is not at least an audiotape recording of the complete interrogation, the defendant is entitled (on request) to a jury instruction advising that the State's highest court has expressed a preference that such interrogations be recorded whenever practicable, and cautioning the jury that, because of the absence of any recording of the interrogation in the case before them, they should weigh evidence of the defendant's alleged statement with great caution and care.

*Id.* at 533-34.

The purpose of jury instructions is to explain the rules of law applicable to a case. *State v. Place*, 152 N.H. 225, 227 (2005). It is within the sound discretion of the trial court to determine whether or not a particular jury instruction is necessary. *State v. Gauntt*, 154 N.H. 204, 206

(2006). We review the trial court's decision not to give a jury instruction for an unsustainable exercise of discretion. *State v. Ayer*, 154 N.H. 500, 514 (2006). To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Place*, 152 N.H. at 227.

The State points out that none of our previous opinions advance the proposition that police testimony concerning unrecorded interviews is inherently unreliable. In addition, the State directs our attention toward *People v. Buck*, 838 N.E.2d 187 (Ill. App. Ct. 2005), *appeal denied*, 844 N.E.2d 967 (Ill. 2006), in which the Illinois Appellate Court explained that: (1) no other state has followed Massachusetts in adopting the rule stated in *DiGiambattista*, *Buck*, 838 N.E.2d at 206; and (2) the Supreme Judicial Court has held that because the rule it stated in *DiGiambattista* did not involve constitutional rights, it applied only prospectively, *id.* (citing *Com. v. Dagley*, 816 N.E.2d 527, 534 (Mass. 2004)).

 We cannot say that the trial judge unsustainably exercised his discretion by declining to give the *DiGiambattista* instruction because we have never adopted the rule stated in that case. We have recognized that videotaping custodial interrogation may lessen inherent speculation, avoid unwanted claims of coercion, and generally assist all parties in assessing what transpired during the interrogation, such that, to the extent possible, custodial interrogations of juveniles should be videotaped. *State v. Farrell*, 145 N.H. 733, 739 (2001). We have also recognized that listening to a defendant be inculpated by his or her own voice has a persuasive power unrivaled by contradictory testimonial evidence, thus making inequitable the admission of selective recordings of a post-*Miranda* interrogation, and persuading us to hold that in order to admit into evidence the taped recording of an interrogation, which occurs after *Miranda* rights are given, the recording must be complete. *State v. Barnett*, 147 N.H. 334, 337-38 (2001). But we have never expressed the reservations about unrecorded interrogations articulated by the *DiGiambattista* Court, and, likewise, we have never adopted the rule established by that case. Because *DiGiambattista* is not the law of New Hampshire, the trial judge's decision not to give the requested instruction was not an unsustainable exercise of discretion. *See Place*, 152 N.H. at 227.

Moreover, notwithstanding the defendant's suggestion that we adopt *DiGiambattista*, the facts of this case are substantially different from those of *DiGiambattista*. In *DiGiambattista*, it was undisputed that the police elicited a confession from the defendant through various forms of trickery. *DiGiambattista*, 813 N.E.2d at 520, 524. The lack of an electronic record of the confession in that case "resulted in the expenditure of

significant judicial resources (by three courts), all in an attempt to reconstruct what transpired during several hours of interrogation . . . and to perform an analysis of the constitutional ramifications of that incomplete reconstruction," and left the Court to conclude that "[w]e will never know whether, if able to hear (or even view) the entirety of the interrogation, the impact of the officers' trickery and implied offers of leniency might have appeared in context sufficiently attenuated to permit the conclusion that DiGiambattista's confession was nevertheless voluntary." *Id.* at 529.

Here, by contrast, there is little factual dispute concerning what happened during the defendant's interrogation. The State introduced Officer Brennan's testimony that the defendant confessed to raping the victim, while the defendant introduced his own testimony that rather than confessing to Officer Brennan, the officer told him that he had raped the victim, presumably as a part of his interrogation strategy. However, both sides agree that the defendant told Officer Brennan that he had sex with the victim and that her participation was not fully consensual. The key dispute is over what the defendant meant when he told Detective Brennan that his sexual conduct with the victim "was not one hundred percent consensual," and the defendant offered testimony on that very issue at trial. In light of the defendant's own admission that he told Officer Brennan that he had non-consensual sex with the victim and his subsequent explanation of what he meant by "nonconsensual," determining whether he said "yes" or "no" when Officer Brennan asked him whether he raped the victim is relatively inconsequential. Because the concerns raised by the *DiGiambattista* Court are not present in the factual circumstances of this case, we decline to use this case to decide whether to adopt *DiGiambattista* for New Hampshire, and leave that issue for another day.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.