Hillsborough-northern judicial district
No. 2007-610

# THE STATE OF NEW HAMPSHIRE

v.

# ERIC HEBERT

Argued: September 16, 2008
Opinion Issued: January 29, 2009

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Eric Hebert, challenges his misdemeanor conviction for simple assault. RSA 631:2-a (2007). He argues that the Superior Court (*Abramson*, J.) erred by permitting the State to introduce evidence of his prior felony conviction under former New Hampshire Rule of Evidence 609(a) and by failing to provide a limiting instruction. We affirm.

I

The jury could have found the following facts based upon the record. The defendant and Eric Picard worked for a drywall business owned by the

defendant's uncle, Gilles Hebert, who was married to Picard's sister, Tasha. The defendant and Picard shared an apartment for several months in 2004 and 2005. Picard later moved out and, according to the defendant, owed him about $1,150. At trial, Picard acknowledged owing the defendant money, but contended that the debt was much less. After Picard moved out, the defendant attempted to collect on the debt, but Picard avoided him.

On August 18, 2005, Picard visited his sister Tasha, and, while he was there, the defendant arrived. Picard told Tasha that he owed the defendant money and then left through a rear door to avoid an encounter. The defendant, however, noticed a car depart, and, soon thereafter, he followed it. When he spotted Picard's car at a gas station, he pulled in, unnoticed, and parked behind him. He alighted from his car and walked toward Picard's vehicle. As he did so, Picard reached into his console to find money to buy cigarettes, and when he sat up, the defendant struck him in the face with an object. As the defendant was returning to his car, Picard saw him carrying a black object about sixteen inches in length.

After the two argued briefly, Picard went into the gas station to purchase cigarettes, and when he returned, the defendant demanded that Picard call his uncle to borrow money to pay the debt. The defendant initiated the phone call, and Picard did as requested. The two then returned to the sister's home to retrieve the money. When Gilles gave the defendant $400, he demanded an additional $200, stating that he had "paid $200 to get [Picard's] legs broken." At trial, the defendant denied making this statement but admitted that he had brandished a black rubber hose at Gilles' home. He also acknowledged telling Picard either that he should have broken Picard's legs a long time ago, or that Picard was lucky that he had not hit him with the hose. At that point, Gilles told the defendant to leave his property. Picard subsequently sought medical attention for his injuries, which included a broken jaw. He underwent surgery, had teeth extracted, and had his jaw wired shut for several months.

At trial, the defendant admitted to assaulting Picard but claimed that he acted in self-defense, using only a justifiable measure of force. According to the defendant, after he parked behind Picard's vehicle, he made eye contact with Picard in his side mirror as he approached the car on foot. The defendant testified that he thought Picard was retrieving a weapon when he reached toward his console, so he punched him and then immediately shut Picard's car door to protect himself. He denied striking Picard with any object other than his fist. He introduced evidence to support his fear of Picard, testifying that Picard was violent and had a reputation for violence. He further testified that Picard had apparently stabbed a drug dealer and had beaten someone over the head with a cell phone.

The State challenged the defendant's credibility by submitting evidence that his version of events at trial differed from the version he had provided earlier to the police. During his trial testimony, the defendant admitted that he had lied to the police by claiming that Picard threw a punch at him first. In accordance with a pre-trial ruling, the State asked the defendant during cross-examination about a prior felony conviction to further impeach his testimony under Rule 609(a). The defendant acknowledged that in 1998, he had been convicted for operating a motor vehicle after being certified as a habitual offender (habitual offender conviction). On re-direct, he explained that the conviction was based upon driving after being certified as a habitual offender due to multiple motor vehicle convictions. Additionally, because the defendant had testified on direct examination that he was not generally a violent person, at the State's request the trial court ruled that he had opened the door to the admission of additional prior convictions. Specifically, the State was permitted to cross-examine the defendant on his 1993 conviction for conspiracy to commit assault and his 2004 conviction for resisting arrest. Ultimately, the jury acquitted the defendant of second degree assault and convicted him of simple assault.

On appeal, the defendant does not challenge the admission of his 1993 and 2004 misdemeanor convictions that were offered to rebut his testimony on direct examination that he was not violent. Rather, he focuses exclusively upon the admission of his 1998 felony habitual offender conviction under Rule 609(a) to impeach his credibility.

## II

The defendant's challenge to the admission of his 1998 felony habitual offender conviction is two-fold. First, he argues that the trial court erred in permitting the State to introduce it under Rule 609(a). Second, he contends that the trial court erred by failing to provide a limiting instruction to the jury to ensure that it relied upon his habitual offender conviction solely for impeachment purposes.

We first address whether admission of the conviction pursuant to Rule 609(a) was erroneous. The version of Rule 609(a) in effect at the time of the defendant's trial provided, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he or she was convicted, and the court determines that the probative value of admitting this evidence

outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

N.H. R. Ev. 609(a) (amended 2007). Because it concluded that "the probative value of the prior felony conviction significantly outweigh[ed] its prejudicial effect," the trial court permitted the State to use it for impeachment purposes. We review its ruling under an unsustainable exercise of discretion standard. *State v. Deschenes*, 156 N.H. 71, 76 (2007). The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

 "Prior convictions are admissible to impeach a defendant even if the crimes do not directly involve a lack of veracity." *Id.* at 77 (quotation omitted). Jurors ought to be informed of "what sort of person is asking them to take his word, and lack of trustworthiness may be evinced by [a defendant's] *abiding and repeated* contempt for laws which he is legally and morally bound to obey." *Id.* (quotations and brackets omitted). When balancing the probative value and prejudicial effect under Rule 609(a), the following factors are pertinent:

> the impeachment value of the prior conviction, the date of the conviction and the witness's subsequent history, the degree of similarity between the past crime and any conduct of the witness currently at issue, the importance of the witness's testimony, and the centrality of the credibility issue.

*Id.* at 76-77 (quotation omitted). When examining the prejudicial effect of convictions for crimes that do not involve dishonesty or false statement, two factors are pertinent:

> (1) the inherent ability of a crime to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action, and (2) when the witness is also the defendant, the similarity between the conviction intro-duced for impeachment purposes and the crime for which the defendant is on trial.

*Id.* at 78 (quotation and citation omitted). The second factor is measured along a continuum in which a conviction for a crime that is the most different from the charged crime is "least prejudicial," while a conviction for the same crime would be the "most prejudicial." *Id.* (quotations omitted).

The defendant argues that the habitual offender conviction had little probative value for impeachment of his credibility because the underlying

crime did not involve dishonesty or a false statement, the State had other evidence challenging his credibility, and the conviction occurred nine years before his assault trial. He contends that its minimal probative value is outweighed by its inherent prejudicial effect because the conviction could have aroused negative jury sentiment, at a minimum implying that he was an unsafe driver and posed a danger to other travelers. We are not persuaded.

■ First, we reject the defendant's attempt to minimize the probative value of his felony offense for driving after being certified a habitual offender because it did not involve dishonesty or a false statement. The trial court found that by asserting self-defense, the defendant asked the jury to believe that he was justified in assaulting Picard, and, thus, his credibility was "of particular importance." At trial, the defendant explained that his certification as a habitual offender was based upon multiple motor vehicle violations. The trial court reasoned that the habitual offender conviction evinced an abiding and repeated contempt for the law, and thus provided insight into the defendant's trustworthiness. This conclusion is not clearly untenable or unreasonable. See State v. Hickey, 129 N.H. 53, 57 (1986) (abiding and repeated contempt for law may evince lack of trustworthiness though the violations may be for crimes not involving dishonesty or false statement); Deschenes, 156 N.H. at 78 (number of prior convictions may evince the degree to which defendant's contempt for the law is abiding and repeated).

■ Further, we are unpersuaded by the defendant's assertion that the other means of impeaching his credibility utilized by the State minimized the probative value of his habitual offender conviction. The defendant specifically points to the State's reliance upon his trial testimony that he lied to the police when initially recounting his version of the assault. As the State points out, however, the defendant first admitted to this lie during cross-examination, well after the trial court rendered its pre-trial ruling, and the defendant makes no suggestion that he asked the trial court to reconsider its ruling in light of his admission. Moreover, even after the defendant admitted to lying to the police, his credibility remained at issue because he asked the jury to believe his explanation for lying and to trust the account he gave at trial.

■ Finally, the defendant relies upon the considerable passage of time between his 1998 felony conviction and the 2007 trial to challenge the conviction's probative value. While we agree that the nine-year span may diminish the probative value of the habitual offender conviction, we cannot conclude that the trial court's decision to admit it was clearly untenable or

unreasonable given the repetitive transgression of the law that the habitual offender conviction represents. *See id.* (repeat convictions for same or similar offenses within nine-month time frame could be especially probative of trustworthiness, even when such convictions occurred nearly ten years earlier).

■ With respect to prejudicial effect, the trial court determined that it was diminished because the habitual offender conviction "may be considered a *driving* offense." While the trial court did not explicitly apply the factors for reviewing prejudicial effect as outlined in *Deschenes*, we interpret its ruling to mean that the conviction in this case was not inherently horrifying and was sufficiently dissimilar to the charged assault. *See id.* (reviewing whether prior conviction was inherently horrifying even though trial court did not expressly address first prong of prejudicial effect test). We agree and conclude, therefore, that its ruling is not clearly untenable or unreasonable.

## III

The defendant next argues that the trial court's failure to give a limiting instruction to the jury regarding its proper use of his felony habitual offender conviction requires that his conviction for simple assault be reversed pursuant to *State v. Skidmore*, 138 N.H. 201 (1993). To resolve the merits of the defendant's argument, we first determine the proper standard of review.

Because evidence of a prior conviction is inherently prejudicial to a defendant, when a trial court admits such evidence for impeachment purposes pursuant to Rule 609(a), it must give a limiting instruction. *State v. Cassell*, 140 N.H. 317, 318 (1995); *see Skidmore*, 138 N.H. at 203. In *Skidmore*, we held that the admission of prior conviction evidence pursuant to Rule 609(a) without a limiting instruction was error unless a defendant specifically waived his right to it on the record. *Skidmore*, 138 N.H. at 202. By so holding, we created an exception to the contemporaneous objection requirement and permitted appellate review even in the absence of a defendant's objection. *Id.* at 203. We examined the consequence of the trial court's error under a harmless error standard of review to determine whether the defendant's conviction should be reversed. *Id.*; *see Cassell*, 140 N.H. at 318 (limiting *Skidmore* exception to contemporaneous objection rule to circumstances in which prior conviction evidence is admitted for impeachment purposes during cross-examination pursuant to Rule 609(a)).

■ Today, we stand by our holding that a trial court is required to give a limiting instruction when evidence of a prior conviction is utilized on cross-examination to impeach a defendant's testimony under Rule 609(a),

unless the defendant expressly waives his right to such an instruction on the record. *See Skidmore*, 138 N.H. at 202. Since *Skidmore* was decided, however, we have adopted the plain error rule. SUP. CT. R. 16-A; *see State v. MacInnes*, 151 N.H. 732, 736-37 (2005) (referring to recently adopted plain error rule). Accordingly, we overrule that portion of *Skidmore* that creates an exception to the contemporaneous objection requirement.

██ ██ Overruling any part of established precedent is not a task we undertake lightly. The doctrine of stare decisis "demands respect in a society governed by the rule of law," because "when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." *State v. Holmes*, 154 N.H. 723, 724 (2007) (quotations omitted). When determining whether to depart from precedent,

> [s]everal factors inform our judgment, including whether: (1) the rule has proven to be intolerable simply by defying practical workability; (2) the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Id.* at 724-25. The first two factors have little implication in this case. Rather, the latter two prompt us to overrule *Skidmore* in part.

The plain error review standard, Supreme Court Rule 16-A, is an exception to the contemporaneous objection rule and provides us with the discretion to review unpreserved error on appeal for plain error that affects substantial rights. *See State v. Panarello*, 157 N.H. 204, 207 (2008). This review standard was not within the body of New Hampshire law at the time we decided *Skidmore* and constitutes a significant development in our standard of review jurisprudence because it permits review of error that was not otherwise brought to the attention of the trial court. Therefore, the *Skidmore* exception to the contemporaneous objection rule, which deems preserved a trial court's failure to provide a limiting instruction to the jury in the Rule 609(a) context, even when a defendant does not object, is no longer justified. Requiring defense counsel to contemporaneously object to the trial court's failure to provide such a limiting instruction abides by our well-established policy of affording the trial court the opportunity to correct error in the first instance, a policy that is grounded in common sense and judicial economy. *See State v. Ainsworth*, 151 N.H. 691, 693-94 (2005).

■ Today, we overrule that portion of *Skidmore* that created an exception to the contemporaneous objection requirement and consequently applied the harmless error standard of review to the trial court's error. Accordingly, should a trial court fail in its obligation to provide a limiting instruction after prior conviction evidence is elicited during cross-examination pursuant to Rule 609(a), the defendant must raise a contemporaneous objection to preserve the issue for appeal. Otherwise, the trial court's failure to provide a limiting instruction may be reviewed only for plain error.

■ Because the defendant did not object to the trial court's failure to provide a limiting instruction in this case, our holding today would dictate that we review the trial court's failure for plain error. Application of the plain error standard of review in this case, however, would lead to a harsh result, contrary to the interests of justice. *See Appeal of State Employees' Assoc. of N.H.*, 156 N.H. 507, 511 (2007) (applying new holding prospectively where retroactive application would lead to a harsh result due to parties' reasonable reliance upon prior holding); *Lee James Enters. v. Town of Northumberland*, 149 N.H. 728, 729-30 (2003) (judicial decisions can be applied prospectively where retroactive application would cause harsh result and justice would be better served); *cf. State v. Tierney*, 150 N.H. 339, 343-44 (2003) (retroactive application of new constitutionally based rule of criminal procedure assumes that new rule benefits appealing defendant). Specifically, under *Skidmore*, the governing law at the time of the defendant's trial, the State bears the burden of establishing on appeal that the trial court's error in failing to provide a limiting instruction in the Rule 609(a) context was harmless and, thus, the challenged conviction should be upheld. *See Skidmore*, 138 N.H. at 203 (applying harmless error standard to trial court error of failing to provide limiting instruction in Rule 609(a) context); *State v. O'Maley*, 156 N.H. 125, 129 (2007) (burden on State to prove harmless error). In contrast, the plain error review standard requires a defendant to establish the underlying requisites necessary to overturn his conviction. *See State v. Lopez*, 156 N.H. 416, 426 (2007) (court refused to reverse conviction for plain error because defendant failed to show that error affected outcome of proceeding). Therefore, we conclude that application of the plain error standard in this case would create a harsh result by shifting the burden of proof from the State to the defendant, contrary to the interests of justice. Accordingly, that portion of our holding today that partially overrules *Skidmore* applies prospectively to trials commenced on or after the date of this opinion. *See State v. Tallard*, 149

N.H. 183, 185 (2003) ("state courts clearly can determine the retroactivity of their own decisions on state law issues"); *Tierney*, 150 N.H. at 343 (same).

■■ For the purposes of this appeal, therefore, and in conformity with *Skidmore*, we apply the harmless error standard to the trial court's failure to give a limiting instruction in this case. "The erroneous admission of evidence is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the admission." *Skidmore*, 138 N.H. at 203. "[I]t is not a question whether the evidence, apart from that erroneously admitted, would support a finding of guilt, but whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *Id.* at 203-04 (quotation omitted). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential to the strength of the State's evidence of guilt." *State v. Connor*, 156 N.H. 544, 549 (2007).

■ The purpose for providing a limiting instruction when prior conviction evidence is admitted under Rule 609(a) is to limit a jury's consideration of the evidence to impeachment purposes only. *Skidmore*, 138 N.H. at 202. A limiting instruction helps ensure that the jury will not draw an impermissible inference from a prior conviction; that is, that a defendant had a disposition to commit crime or that a prior conviction constitutes substantive evidence of guilt for the charged crime. *See id.*; *cf. Hickey*, 129 N.H. at 61 (purpose of giving limiting instruction accompanying evidence admitted under Rule 404(b) is to explain proper purpose for relying upon such evidence and to minimize danger that a jury will draw an impermissible inference). Additionally, a limiting instruction serves to minimize the likelihood that the prior conviction will stir up the jury's sense of horror and outrage against a defendant or trigger other mainsprings of human action. *Cf. Deschenes*, 156 N.H. at 78.

■ Under the circumstances of this case, we conclude beyond a reasonable doubt that admission of the defendant's habitual offender conviction without a limiting instruction did not affect the verdict. First, the evidence of the defendant's guilt is overwhelming. This is not a case in which the defendant denies any involvement with the charged offense. Rather, the defendant admitted to striking Picard, but claimed that he acted in self-defense. He testified that he repeatedly sought repayment of a debt from Picard, and that he grew "very upset" because Picard continually avoided him. He admitted that on the day of the assault, he parked behind Picard at the gas station in order to confront him about the

debt. He testified that when Picard saw him walking toward his car, Picard promptly bent down in the direction of his car's console. Consequently, he feared that Picard was retrieving a weapon. He claimed that he struck Picard with his fist to protect himself. According to Picard, however, he was trying to avoid the defendant and was parked at the gas station when he was suddenly assaulted by him with a long black object.

While the jury was asked to decide between two different versions of the same event, the defendant impeached his own credibility by admitting that he lied to the police when he told a detective that Picard swung at him first. Moreover, the defendant undermined his own explanation of the assault. *See State v. Taylor*, 141 N.H. 89, 93 (1996). For instance, while he testified about his knowledge of prior acts of violence that Picard had allegedly committed and about his fear that Picard could be volatile, violent and dangerous, he nonetheless parked behind him that day in order to initiate a confrontation about the debt. He also testified that when he became worried about his own personal safety, he nonetheless failed to return to his car and drive away. Additionally, he admitted to telling Picard that he was not going to leave until he got some money on the debt and to following Picard to Gilles' house. The defendant also admitted to owning a rubber tube or hose, but insisted that he only showed it to Picard after the two had returned to Gilles' house, telling Picard either that he should have broken Picard's legs a long time ago, or that Picard was lucky that he did not hit him with it. Furthermore, other testimony in the case supported Picard's version of the assault. For example, Tasha testified that Picard left her house that day in order to avoid a confrontation with the defendant. She also testified that when the two later returned to get money from Gilles, Picard told her that the defendant just hit him in the face with a long object. Therefore, we conclude that the evidence presented to prove the defendant's guilt was overwhelming.

Second, we conclude that any improper inference that the jury drew from the defendant's habitual offender conviction was inconsequential because that conviction was significantly different from the assault offense for which the defendant was charged. The jury learned that the habitual offender conviction was based upon multiple motor vehicle violations. Thus, while the jury may have inferred that the defendant had contempt for motor vehicle laws or was an unsafe driver, we are convinced that the jury would not equate such violations with a propensity to intentionally commit a violent act against another, the nature of the charged offense. *Cf. Skidmore*, 138 N.H. at 204 (jury may have relied upon burglary conviction as substantive evidence of guilt of charged crimes of forgery and receiving stolen property, where no limiting instruction given).

318

Finally, the State did not present the habitual offender conviction to the jury in a manner that would have suggested that the defendant had a propensity to commit the charged assault or that would have aroused the jury's sense of horror, outrage or an instinct to punish. The State asked only one question about the conviction during its cross-examination of the defendant and did not mention it during closing argument. *Cf. id.* (State juxtaposed prior burglary conviction with events underlying charged crimes in manner that gave jury impression that defendant acted similarly regarding the charged crimes).

Accordingly, we conclude that the State has established beyond a reasonable doubt that the trial court's error in failing to provide a limiting instruction was harmless.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.