WINDOM, Judge,
dissenting.
I agree with the majority’s determination that the circuit court erred by failing to instruct the jury that it could consider Waldrop’s prior aggravated-assault conviction only for impeachment purposes. See Ex parte Minor, 780 So.2d 796 (Ala.2000). However, based on the nature of Wal-drop’s defense, the manner in which the prosecutor used Waldrop’s prior conviction, and the obvious impeachment purpose for the admission of the prior conviction, I disagree that any such error rises to the level of plain error. Rule 45A, Ala. R.App. P. Therefore, I respectfully dissent.
“The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal.” Hall v. State, 820 So.2d 113, 121 (Ala.Crim.App.1999). “‘“To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.”’” Ex parte Brown, 11 So.3d 933, 938 (Ala.2008) (quoting Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002), quoting in turn Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998)). That is, “ ‘the plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.”’” Ex parte Brown, 11 So.3d at 938 (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), quoting in turn United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Although the “failure to object does not preclude [appellate] review in a capital case, it does weigh against any claim of prejudice.” Ex parte Kennedy, 472 So.2d 1106, 1111 (Ala.1985).
In Ex parte Minor, the case primarily relied upon in the majority opinion, the Alabama Supreme Court held that the circuit court’s failure to give an instruction limiting the jury’s consideration of Minor’s prior convictions to impeachment constituted plain error. 780 So.2d at 802-04. Minor was charged with capital murder for causing the death of his infant son, Ebious. Id. at 797-98. At trial, Minor testified in his defense and “maintained that he did not kill Ebious and that he did not strike Ebious in any way.” Id. at 799. During his testimony, Minor was impeached with his prior “convictions for assault in the second degree, for possession of cocaine, and for rapé in the second degree.” Id. At the conclusion of the trial, the circuit court did not instruct the jury that it could consider Minor’s prior convictions only for impeachment purposes. Id.
The Alabama Supreme Court held that the circuit court erred in failing to sua sponte instruct the jury that it could consider Minor’s prior convictions only for impeachment purposes. Specifically, the Supreme Court stated:
“The trial court did not tell the jury that the evidence of Minor’s prior convictions could not be considered as substantive evidence that he committed the crime charged. Because the jurors were not so instructed, they were free to consider the prior convictions for any purpose; thus, they could consider the probability that Minor committed the crime because he. had demonstrated a prior criminal tendency.”
*78 Id. at 803. The Supreme Court went on to hold that the “presumptively prejudicial nature of evidence of a defendant’s prior convictions,” coupled with the possibility that the jury .considered Minor’s prior convictions as substantive evidence because it has not been given a limiting instruction, constituted plain error. Id. at 804.
In Snyder v. State, 893 So.2d 482, 485 (Ala.2001), the Alabama Supreme Court explained that its decision in Ex parte Minor did not create a per se rule requiring reversal when a limiting instruction was not given on the use of evidence of prior convictions. Instead, the failure to give a limiting instruction must be reviewed on a case-by-case basis. Ex parte Martin, 931 So.2d 759, 768 (Ala.2004); Snyder, 893 So.2d at 485; see also Johnson v. State, [Ms. 1041313, Oct. 6, 2006] — So.3d -, - (Ala.2006) (“This Court in Snyder limited the holding of Ex parte Minor by stating that although the Court in Ex parte Minor found ‘plain error in the trial court’s failure to instruct the jury on the purpose of the evidence of Minor’s prior conviction, the Court’s holding in that regard did not establish a per se rule’ regarding such evidence and that ‘each inquiry regarding the propriety of an instruction on the use of evidence of prior convictions presented for impeachment purposes must be determined on a case-by-case basis.’”)(quoting Snyder, 893 So.2d at 485). Applying a case-by-case analysis as mandated by the Alabama Supreme Court, I conclude that the circuit court’s failure to give an instruction limiting the jury’s consideration of Waldrop’s prior convictions did not constitute plain error.
Part of Waldrop’s defense was that he “snapped” and killed his three-and-a-half-week-old son, Jodey Chance Waldrop (hereinafter “Chance”).[2] Waldrop presented evidence indicating that he had been having financial problems. Wal-drop’s wife had been engaging in extramarital affairs, and Waldrop and his wife had fought the day Waldrop caused Chance’s death. Further, Chance had cried all night the night before and all day on the day of his death. Also, the day he caused Chance’s death, Waldrop had used drugs. Based on these facts, Waldrop’s counsel argued that Waldrop was overwhelmed and extremely frustrated. Counsel argued that due to his frustration:
“[H]e just snapped at that moment in time from what had built up over the weeks through the course of that marriage, through the suspected infidelities, through the financial problems, through everything, he snapped. And if you believe it’s him that he just grabbed a crying baby, and for a brief instant and a moment he did a terrible act.
(R. 1761-62.) According to defense counsel, Waldrop “snapped” and caused the child’s death; however, Waldrop did not mean to cause the child’s death. Therefore, Waldrop did not have the specific intent necessary for a capital-murder conviction. See (R. 1768) (counsel arguing that-Waldrop is “deeply sorry for that momentary loss of control,” but did not intend to kill the child).
Based on the representation by Wal-drop’s counsel that Waldrop “snapped” and assaulted the child but did not intend to cause the child’s death, any error in the trial court’s failure to instruct the jury that it could consider Waldrop’s prior assault conviction for impeachment purposes only did not “‘“have an unfair prejudicial impact on the jury’s ’” Ex parte Brown, 11 So.3d at 938 (quoting Ex *79 parte Bryant, 951 So.2d at 727, quoting in turn Hyde v. State, 778 So.2d at 209). It is unreasonable to assume that 12 rational jurors distinguished between an unintentional killing resulting from an assault and an intentional killing based on Waldrop’s prior assault conviction. Compare State v. Hebert, 158 N.H. 306, 317, 965 A.2d 1059, 1067 (2009) (holding that the failure to instruct the jury regarding the limited purpose for which it could consider prior convictions was harmless when the defendant did not deny involvement in the offense and the jury was only asked to decide between two versions of the same event), with Ex parte Minor, 780 So.2d at 802-04 (holding that the circuit court’s failure to give a limiting instruction regarding prior convictions constituted plain error in a case where the defendant maintained that he did not strike his child or cause his child’s death); cf. Barnes v. State, 727 So.2d 839, 843 (Ala.Crim.App.1998) (holding that the admission of evidence indicating that the defendant in a capital-murder (murder/burglary) trial had unrelated outstanding warrants for burglary was not prejudicial because the defendant admitted committing the burglary, thus leaving the jury only to decide between felony murder and capital murder); Brown v. State, 11 So.3d 866, 905-06 (Ala.Crim.App.2007) (same). Because Waldrop asserted that he unintentionally killed his son, he has not established that the circuit court’s failure to instruct the jury regarding a prior conviction for assault had an unfair adverse impact on the jury’s deliberations. See Ex parte Walker, 972 So.2d 737, 752 (Ala.2007) (recognizing that the appellant/defendant has the burden to establish prejudice relating to an issue being reviewed for plain error). In other words, Waldrop has failed to establish any likelihood that the jury distinguished between capital murder and a lesser unintentional homicide based on his prior conviction for a nonfatal assault. Because Waldrop’s prior assault conviction was not inconsistent with his defense that he merely assaulted Chance and did not intend to kill him, I do not believe that Waldrop has established that the circuit court’s failure to give a limiting instruction rises to the level of plain error. Ex parte Brown, 11 So.3d at 938.
Additionally; “the State did not present thé [prior] conviction to the jury in a manner that would have suggested that [Wal-drop] had a propensity to commit the charged [crime] or that would have aroused the jury’s sense of horror, outrage or an instinct to punish.” Hebert, 158 N.H. at 318, 965 A.2d at 1068. As the majority noted, Waldrop introduced his prior conviction and the facts underlying that conviction on direct examination through- defense counsel. The State did not impeach Waldrop with the fact that he had a prior conviction; instead, it elicited testimony indicating that Waldrop had misrepresented the facts underlying his prior conviction during his direct-examination testimony. In other words, the State did not impeach Waldrop with his prior conviction; it impeached him with his prior inaccurate direct-examination testimony.
For instance, during its cross-examination regarding Waldrop’s testimony relating to his prior conviction, the State asked, “[y]ou didn’t tell us the whole truth about that, did you?” (R. 1635.) The State then, referring back to Waldrop’s direct-examination testimony, established that Waldrop had misrepresented the extent of the victim’s injuries and had misrepresented the sentence imposed. See (R. 1528) (Waldrop testified on direct examination that his victim required 3 staples in his head as a result of the assault); (R. 1637) (the State elicited testimony that Waldrop’s victim actually required 10 staples to close his wound). Further, during its closing argument, the State asserted:
*80 “His whole story is a lie. Before he even says he dropped it, you have to do this to get a baby to be able eat (demonstrating). So the baby was never eating. I can tell you that. And the bottle is right where Starlette left it, in the cup holder.
“Oh, Mr. Wasson must have come in and cleaned up the house while I was gone in one day. That’s ridiculous. He wants you to. believe that. Not only that, he’s lied five other times in five other statements. He don’t want to say it. You know, finally, he just said, Oh, yeah, I lied in the handwritten statement where I admitted shaking the baby to death.

“And then he has the audacity to get wp there and lie about his criminal history to you as a juror, thinking we didn’t even know, to minimize it just like he’s done this entire case. From statement one, two, he had lied, he lied, he lied, he lied, he lied. And now today, he lied. Six times.

“He lied about his criminal record. Oh, it’s just a little assault, I did eleven months. Five years, aggravated assault. That’s what this is about. Ten minutes, ten minutes is what Starlette testified it took [Waldrop] to get to the hospital. Ten minutes. He lived two blocks from the hospital.”
(R. 1802-04) (emphasis added.)
As the foregoing shows, the State did not impeach Waldrop with his prior conviction; instead, it impeached him with misrepresentations he made during his direct examination testimony. The manner in which the State used Waldrop’s prior conviction, i.e., to establish that he “lie[d] about his criminal history,” (R. 1804), did not suggest to the jury that Waldrop had a propensity to commit capital murder. Hebert, 158 N.H. at 318, 965 A.2d at 1068. Nor did the State’s impeachment urge the jury to convict Waldrop on some improper basis. Id. Accordingly, I do not believe that Waldrop has met his burden to establish that the circuit court’s failure to give a limiting instruction rises to the level of plain error. Ex parte Brown, 11 So.3d at 938.
Finally, the purpose for the State’s use of Waldrop’s prior conviction was not prejudicial. The State elicited testimony relating to the prior conviction for the sole purpose of attempting to show that Wal-drop “lied about his criminal record.” (R. 1804.) The State’s second question relating to Waldrop’s conviction, and more specifically Waldrop’s prior testimony relating to that conviction, was: “[Y]ou didn’t tell us the whole truth about that, did you?” (R. 1635.) The. State then, through pointed questions, established that Waldrop’s rendition of the facts underlying his prior conviction was false. (R. 1636-43.) When referring to Waldrop’s prior conviction during closing argument, the State focused the jury’s attention on the fact that Wal-drop had lied in relation to his prior conviction. See (R. 1803-04) (“[H]e has the audacity to get up there and lie about his criminal history to you as a juror.... From statement one, two, he had lied, he lied, he lied, he lied, he lied. And now today, he lied_He lied about his criminal record.”). Based on the manner in which the State used Waldrop’s prior conviction, I do not believe that Waldrop has met his burden to establish that the circuit court’s failure to instruct the jury that the conviction could only be considered in judging Waldrop’s credibility affected the outcome of the trial. Thomas v. State, 824 So.2d 1, 13 (Ala.Crim.App.1999), overruled on other grounds, Ex parte Carter, 889 So.2d 528 (Ala.2004) (recognizing that to rise to the level of plain error, an error must have affected the outcome of the trial).
*81 Because Waldrop’s prior conviction was not inconsistent with part of his theory of defense, and the State did not present the prior conviction evidence in a manner that would suggest that Waldrop has a propensity to commit capital murder, I do not believe that the circuit court’s failure to instruct the jury regarding the prior conviction had an unfair prejudicial impact on the jury’s deliberation or resulted in a manifest injustice. Ex parte Brown, 11 So.3d at 938. Accordingly, Waldrop has failed to establish plain error, and his conviction should be affirmed.

. Waldrop’s defense was actually two-part: 1) he did not cause the child’s death; and 2) he injured the child but did not intend to cause the child’s death.